JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Michael Hilton appeals his convictions for rape, gross sexual imposition, and kidnapping. For the reasons set forth below, we affirm in part and reverse in part.
 {¶ 2} On April 21, 2006, the Cuyahoga County Grand Jury returned a 39-count indictment against appellant. He was charged with the following: counts 1 through 13, rape of a person under 13 years of age, in violation of R.C. 2907.02(A)(1)(b); counts 14 through 26, gross sexual imposition, in violation of R.C. 2907.05(A)(4); and counts 27 through 39, kidnapping, with a sexual motivation specification, in violation of R.C. 2905.01(A)(2) and/or (A)(4), and R.C. 2941.147. Counts 1 through 13 and 27 through 39 are felonies of the first degree, and counts 14 through 26 are felonies of the third degree.
 {¶ 3} On April 26, 2006, appellant was arraigned and entered a plea of not guilty to all charges in the indictment. A jury trial commenced on August 16, 2006, and on August 18, 2006, the jury returned a guilty verdict on all counts. Appellant was referred for a presentence investigation and a psychiatric evaluation.
 {¶ 4} On October 17, 2006, the trial court held a sentencing and a sexual offender classification hearing. The trial court found appellant to be a sexual predator and imposed a sentence of life in prison on each of counts 1 through13, five years in prison on each of counts 14 through 26, and 10 years in prison on each of counts 27 through 39. The trial court ordered that the sentences be *Page 4 
served as follows: counts 1 and 2 to be run consecutive to one another; counts 3 through13 to be run concurrent to 1 and 2; count 14 to be run consecutive to counts 1 and 2; counts 15 through 26 to be run concurrent to each other and concurrent to 1, 2 and 14; count 27 to be served consecutive to counts 1, 2, and 14; and counts 28 through 39 to be served concurrent to each other and concurrent to all other counts. Post release control was made a part of the sentence.
 {¶ 5} Appellant was granted leave of this court to file a delayed appeal and on January 2, 2007, filed this appeal of his conviction and sentence asserting 10 assignments of error for review.
 {¶ 6} In keeping with this court's policy, children will be referred to by their initials and the facts will be discussed only as needed to address appellant's assignments of error.
 {¶ 7} Briefly stated, the state's evidence showed that N.E.'s father was a convicted drug user who was in and out of jail and appellant was his AA sponsor. In 2003, appellant moved into the house where N.E. lived with her father, mother, older sister ("T.E."), and two brothers. After N.E.'s father was sent back to jail for resuming his use of cocaine, N.E.'s mother filed for divorce. Appellant remained living in the home and assumed the role of the father figure in the household, making improvements to the house, helping the children with their homework, assigning chores, and disciplining the children. *Page 5 
 {¶ 8} In April 2006, T.E. complained to her mother about appellant touching her under her shirt while she sat on his lap and he looked at the computer. She explained that his touches made her feel uncomfortable. N.E.'s mother then asked her whether appellant had touched her in the same way. N.E. answered, "More, Mommy, much more." N.E. described numerous instances of sexual abuse by appellant.
 {¶ 9} N.E.'s mother took her to the police station where she made a report and then to the Parma hospital emergency room. At the hospital, N.E. was examined by Dr. Sullivan. Following the physical exam, Dr. Sullivan referred N.E. to the Rape Crisis Counseling Center, and advised her to have a follow-up medical exam and counseling.
 {¶ 10} Dr. Sullivan made a report of suspected abuse to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). N.E. was interviewed by Michael Bokmiller, a social worker in the sex abuse intake department of CCDCFS. Bokmiller also recommended N.E. undergo counseling and have a follow-up medical examination. He referred N.E. to Dr. Feingold at the Alpha Clinic, a clinic for the evaluation of sexual abuse at Metrohealth Medical Center. Dr. Feingold, Director of Child Protection Services at Metrohealth, took N.E.'s history and examined her. He then diagnosed sexual abuse and developed a treatment plan for N.E. which included psychotherapy. *Page 6 
 {¶ 11} At trial the state presented seven witnesses: N.E. and T.E., their mother, Dr. Sullivan, Dr. Feingold, Mr. Bokmiller, and a Cleveland police detective who testified to pornographic materials found on appellant's computer. The defense did not present a case and objected to much of the evidence elicited from the state's witnesses.
 {¶ 12} N.E. testified that appellant began to sexually molest her in March of 2005 when she was 12 years old, and continued to do so regularly until March of 2006. She described how appellant would rub her stomach under her shirt and put his hands under her pants while she sat on his lap watching him working or playing on the computer. She said she tried to push his hands away but he would put them back and tell her to stop.
 {¶ 13} After these incidents, N.E. said appellant began calling her upstairs to her mother's bedroom after he bathed and asked her to rub oil on his back. At one point he turned over to have her rub oil on his chest, grabbed her hand, held it and made her touch his penis. She said sometimes when he tried to get her to touch him, she would pull her hand away or try to sit on her hands but appellant would tell her to "come on" or to "stop." She said sometimes when he persisted in trying to make her touch his penis, she would do so to prevent appellant from getting angry or being in a bad mood.
 {¶ 14} N.E. described appellant's sexual behavior toward her as happening "in sections" over time. She testified that in the next "section," appellant began *Page 7 
to come downstairs to her bedroom in the basement and wake her up to follow him upstairs. She said if she tried to pretend to go back to sleep, he would just come back downstairs and move her shoulders or take the blankets off to wake her up to go upstairs. Once upstairs, appellant would take N.E. to the couch in the living room where he slept or to the office where he kept his computer. N.E. described how appellant would take her shorts or pajama bottoms off and touch the inside and outside of her vagina with his fingers while he touched his penis. She stated that appellant laid her on the couch and "put his penis in my vagina."
 {¶ 15} N.E. also testified that on other times appellant took her into the computer room and tried to get her to watch "porn" on his computer while he had her sit on his penis. Again, she said he put his penis in her vagina and it hurt. N.E. stated that one time she went into the bathroom afterward and noticed she was "bleeding a little." She said another time, appellant licked her vagina.
 {¶ 16} N.E. testified that this behavior continued on a weekly basis for over a year. She said she did not tell anyone because she was afraid. She finally told her mother in March 2006 after her mother told her about appellant touching her sister. She said she told her mother about appellant's abuse because "I was scared that he was going to do this to my sister."
 I *Page 8 {¶ 17} In his first assignment of error, appellant asserts that he was denied his due process rights to notice and to be protected from double jeopardy as the 39 offenses of the indictment were not charged with sufficient specificity.
 {¶ 18} In Russell v. United States (1962), 369 U.S. 749, 763-764, the United States Supreme Court set out two criteria by which the sufficiency of an indictment is to be determined: first, that an indictment sufficiently apprises a defendant of the criminal charges against him; and second, that the indictment provides adequate specificity that he may plead acquittal or conviction as a defense against any future indictment for the same conduct.
 {¶ 19} Appellant relies upon the Sixth Circuit decision inValentine v. Konteh (C.A.6, 2005), 395 F.3d 626, in support of his assertion. The Valentine decision held that due process is violated when a defendant is indicted in a multiple count sex abuse indictment when there is no factual basis or distinction between the counts. Id. at 633. The Valentine case involved an indictment alleging 20 counts of child rape and 20 counts of felonious sexual penetration occurring over an 11-month time period. The two offenses were identically alleged and no further information was included to differentiate one count from another. The Valentine court stated:
 {¶ 20} "In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described `typical' abusive behavior by *Page 9 
Valentine and then testified that the `typical' abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented." Id. at 632-633.
 {¶ 21} The court noted that, "[w]hen prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy. * * * Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts." Notably, the Valentine court did not rule out multiple-count indictments, finding instead that, "[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial." Id. at 634.
 {¶ 22} This court has cited to the Valentine decision on a number of occasions. For example, in State v. Warren, 168 Ohio App.3d 288,2006-Ohio-4104, the defendant was charged in a 48-count indictment charging him with 12 identical counts each of rape of a child under the age of 13, gross sexual imposition, kidnapping, and felonious sexual penetration. In State v. Hemphill, Cuyahoga App. No. 85431,2005-Ohio-3726, the 99-count indictment charged the defendant with 33 counts of rape, 33 counts of kidnapping, and 33 counts of gross sexual imposition. In both of those cases, this court cited to Valentinewith *Page 10 
approval and affirmed some of the convictions and reversed others, finding reversal warranted where the victims only estimated the number of times the abuse occurred and the indictments failed to connect the defendant to "individual, distinguishable incidents."
 {¶ 23} However, in State v. Yaacov, Cuyahoga App. No. 86674,2006-Ohio-5321, and State v. Ford, Cuyahoga App. No. 88236,2007-Ohio-2645, this court affirmed the convictions on multi-count indictments, finding there was no due process violation because the defendants denied any sexual contact whatsoever with the victims and, therefore, the lack of specificity in the indictments as to specific dates or places of the alleged abuse did not result in prejudice to the defendants' defense. Additionally, in State v. Russell, Cuyahoga App. No. 88008, 2007-Ohio-2108, and State v. Rice, Cuyahoga App. No. 82547,2005-Ohio-3393, this court rejected Valentine challenges where the testimony elicited from the child-victims provided sufficient differentiation among the counts.
 {¶ 24} Although federal court decisions like Valentine are not binding on state courts, in this case we are persuaded by Valentine's finding that, "[j]ust as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate." *Page 11 
 {¶ 25} In the instant case, we find problematic the state's failure to set out the factual bases for the 13 separate and distinct counts of rape, gross sexual imposition, and kidnapping as charged in the indictment. While N.E.'s testimony described in detail certain specific sexual acts committed by appellant against her, her testimony relating to how often he committed those acts was, "maybe about once a week, and sometimes he would leave me alone for a while, but then it might happen more." The prosecutor then told the jury in closing arguments that, "the State chose, and we argue to you that if you want to just go once a month, we could give you how many verdict forms you want to sign, 52, a hundred? The State was reasonable and went each month." The use of this type of numerical estimation to support a multi-count indictment raises precisely the sort of due process violation warned against inValentine.
 {¶ 26} However, unlike the victims in Valentine or Hemphill, N.E. was able to recall details of specific incidents of sexual abuse by appellant. She was able to differentiate these incidents by the location where each occurred, giving details of incidents in the living room on the couch where appellant slept, in the office in front of appellant's computer, and in her mother's bedroom after appellant had taken a bath. Each one of these incidences are a separate and distinct offense sufficient to support a multi-count indictment.
 {¶ 27} Specifically, N.E. testified to the following: (1) appellant would rub her stomach and put his hands in her pant line and up her shirt as she sat on his *Page 12 
lap in front of the computer in the office; (2) appellant asked her to rub lotion on his back upstairs in the attic bedroom after he got out of the shower and forced her to touch his penis; (3) appellant woke her from her basement bedroom and brought her to the living room where he would remove her shorts or pajamas and touch her inside and outside of her vagina and put his penis inside of her vagina; (4) appellant also woke her from her bedroom and brought her into the office where he put her on his lap, touched her on the inside and outside of her vagina with his fingers, and put his penis in her vagina; and (5) he licked her vagina in the living room.
 {¶ 28} R.C. 2907.02(A)(1)(b) defines the elements of rape and provides that "no person shall engage in sexual conduct with another who is not the spouse of the offender * * * when the other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A).
 {¶ 29} R.C. 2907.05 defines the offense of gross sexual imposition and provides that "no person shall have sexual contact with another, not the spouse of the offender * * * when * * * the other person * * * is less than thirteen years of *Page 13 
age, whether or not the offender knows the age of that person." Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 30} R.C. 2905.01(A)(2) and (A)(4) define the offense of kidnapping and provides that no person, by force, threat, or deception, or, in the case of a victim under the age of 13 by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, to facilitate the commission of any felony or to engage in sexual activity, with the victim against the victim's will. "Sexual activity means sexual conduct or sexual contact, or both." R.C. 2907.01(C).
 {¶ 31} Our review of the record finds sufficient factual bases to differentiate between five counts of rape, five counts of gross sexual imposition, and ten counts of kidnapping. For that reason, we sustain appellant's first assignment of error in part and reverse eight of appellant's rape convictions, eight of the gross sexual imposition convictions, and three of the kidnapping convictions.
 II {¶ 32} In his second and third assignments of error, appellant argues that there was insufficient evidence to support his convictions and that the *Page 14 
convictions are against the manifest weight of the evidence. Although these arguments involve different standards of review, because they are substantially interrelated, we will consider them together.
 {¶ 33} A challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52. The challenge raises a question of law. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. A conviction based on insufficient evidence violates a defendant's Fifth Amendment right to due process. Thompkins, supra, at 386.
 {¶ 34} The test for a claim that the judgment is against the manifest weight of the evidence is much broader. State v. Martin,20 Ohio App.3d 172. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new *Page 15 
trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at paragraph 3 of the syllabus.
 {¶ 35} A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence that goes to all the essential elements of the case. Cohen v. Lamko
(1984), 10 Ohio St.3d 167. The jury convicted appellant of multiple counts of rape, gross sexual imposition, and kidnapping. The relevant portions of the statutes defining those offenses were stated above.
 {¶ 36} The state presented evidence from seven witnesses. The evidence indicated that appellant, a father figure in the home, sexually abused N.E. over the course of more than a year. He touched N.E. under her shirt, under her pants, and outside her vagina. He took her hand and made her touch his penis. He licked her vagina. He put his fingers and penis inside her vagina. The evidence indicated that appellant woke N.E. up and had her leave her bed in the middle of the night to follow him upstairs where he molested her. The evidence showed N.E. tried to feign being asleep to avoid appellant but he would shake her and remove the covers to wake her up to follow him. Any rational trier of fact could have found that the essential elements of the crimes were proven beyond a reasonable doubt. The record in this case presents evidence legally *Page 16 
sufficient to support appellant's convictions on five counts of rape, five counts of gross sexual imposition, and ten counts of kidnapping.
 {¶ 37} A review of the record fails to convince us that the jury lost its way or that a manifest miscarriage of justice occurred. N.E.'s testimony was supported by the state's other witnesses. N.E.'s sister testified to appellant's middle of the night trips to N.E.'s bedroom. Detective King testified to the pornography on appellant's computer. Dr. Sullivan, Dr. Feingold, and Mr. Bokmiller provided testimony which demonstrated that N.E.'s account of the abuse remained fairly consistent each time she recounted it.
 {¶ 38} For these reasons, except as noted in the discussion of the first assigned error, appellants second and third assignments of error are overruled.
 III {¶ 39} Appellant's next three assignments of error assert that the trial court improperly admitted prejudicial evidence. Our standard of review on the admission of evidence is whether the trial court abused its discretion. State v. Sage (1987), 31 Ohio St.3d 173. An "abuse of discretion" means more than an error of law or judgment. Rather, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 40} In his fourth assigned error, appellant argues that the testimony of three witnesses, Dr. Feingold, Dr.Sullivan, and the social worker, Mr. Bokmiller, *Page 17 
was introduced to improperly bolster the victim's testimony, was inadmissable opinion testimony, and constituted inadmissable hearsay. He alleges that none of these witnesses took part in treating or diagnosing N.E. and were merely acting as agents of the state. We disagree.
 {¶ 41} Hearsay evidence is generally inadmissible, unless an exception is determined to be applicable. Evid. R. 803(4) provides that "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are an exception to the hearsay rule.
 {¶ 42} "It is settled law in Ohio that statements made for the purposes of medical diagnosis or treatment are admissible under Evid. R. 803(4)." State v. Chappell (1994), 97 Ohio App.3d 515, 529. See, also,State v. Boston (1989), 46 Ohio St.3d 108; State v. Dever (1992),64 Ohio St.3d 401.
 {¶ 43} Dr. Sullivan is an emergency room physician at Parma Hospital. He was the first doctor to examine N.E. after the sexual abuse was discovered. Dr. Sullivan testified that in addition to performing a pelvic exam, he took N.E.'s medical history, wanting to hear in her own words the events that brought her to the emergency room. He testified that given the patient's age, and his physical examination, his findings were consistent with a history of sexual abuse. Dr. Sullivan stated that in sexual abuse cases, he would normally prescribe *Page 18 
medications to prevent pregnancy and sexually transmitted diseases. However, in N.E.'s case these treatments were determined to be unwarranted and were not offered to her. Dr. Sullivan's treatment consisted of referring N.E. to her own physician and to the Rape Counseling Crisis Center.
 {¶ 44} A few days later, N.E. spoke to Mr. Bokmiller, a social worker with CCDCFS. He testified that he became involved with N.E.'s case after a phone call came in to the CCDCFS kids hotline alleging that appellant had sexually abused N.E. Bokmiller stated that the purpose of his involvement in sexual abuse cases is to determine the need for medical treatment, psychological treatment, and to determine whether the children are safe. In N.E.'s case, because appellant had already been removed from the house, Bokmiller had no safety concerns. He met with N.E. and her mother to determine if there was a need for further medical examination, or if psychological treatment was needed. After speaking with N.E., her mother, and siblings, Bokmiller recommended counseling and further medical examination. He referred the family to the Alpha Clinic.
 {¶ 45} Dr. Feingold testified that the Alpha Clinic is a clinic for the evaluation of sexual abuse. He explained that his responsibility is to make a medical diagnosis and then institute therapy. Dr. Feingold took N.E.'s complete medical history and physically examined her. Based upon the physical exam, N.E.'s history, and information from Bokmiller and Dr. Sullivan, Dr. Feingold *Page 19 
diagnosed sexual abuse and developed a treatment plan for N.E. which included psychotherapy.
 {¶ 46} The statements made by N.E. to Dr. Sullivan and Dr. Feingold were clearly for the purpose of medical diagnosis and treatment and are admissible under Evid. R. 803(4). Further, this court has held that young rape victims' statements made to social workers are admissible under Evid. R. 803(4). State v. Kurpik, Cuyahoga App. No. 80468, 2002-Ohio-3260. However, the statements made to a social worker must be for diagnosis or treatment. State v. Chappell (1994),97 Ohio App.3d 515. We do not find that the trial court erred in permitting Mr. Bokmiller to testify to statements made to him by N.E. The record indicates that the statements made to the social worker were for treatment purposes, and thus fall within Evid. R. 803(4).
 {¶ 47} We also find no merit to appellant's allegation that the trial court erred in admitting Dr. Feingold as an expert in child sexual abuse. Evid. R. 702(B) provides that a witness may testify as an expert when the "witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Dr. Feingold testified to his medical education, training, and experience. He explained that he had spent the last 12 years specializing in the area of child abuse. He detailed years of specialized training, professional affiliations, writing and lecturing, and to *Page 20 
having been involved in more that 500 child abuse cases. Accordingly, appellant's fourth assignment of error is overruled.
 IV {¶ 48} In his fifth assignment of error, appellant claims the trial court erred by admitting evidence that was not relevant in violation of Evid. R. 401, 402, 403, and 404.
 {¶ 49} As a basic principle, all relevant evidence is admissible, unless the probative value of that evidence is substantially outweighed by its prejudicial effect. Evid. R. 403. "Relevant" evidence is defined as evidence having any tendency to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. See Evid. R. 401. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.State v. Sage, supra. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med.Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 50} Appellant argues that Detective King's testimony relating to pornographic images retrieved from appellant's computer was irrelevant and was admitted in violation of Evid. R. 401 and 402. He makes the same argument for the pornographic movies identified by N.E.'s mother as belonging to appellant. We find no merit to this argument. The testimony of Detective King *Page 21 
and the victim's mother is relevant as both witnesses corroborate N.E.'s testimony that appellant showed her pornography on his computer while he sexually abused her. The probative value of this evidence outweighs any prejudice resulting from the disclosure to the jury that appellant owned and watched pornography.
 {¶ 51} Appellant further argues that T.E.'s testimony that he put his hand under her shirt and rubbed her stomach when she sat on his lap in front of the computer constituted inadmissible "other acts" evidence that should have been excluded under Evid. R. 404. He contends that the admission of such evidence was unduly prejudicial and denied him a fair trial. We disagree.
 {¶ 52} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 53} The admissibility of "other-acts" evidence is further limited in prosecutions for sexual offenses. State v. Decker (1993),88 Ohio App.3d 544, 548. Both the rape statute and the gross sexual imposition statute include subsections that limit the admissibility of evidence of other sexual activity by the defendant. R.C. 2907.02(D) and 2907.05(D) provide: *Page 22 
 {¶ 54} "Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59
of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 55} R.C. 2945.59 provides:
 {¶ 56} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 57} We recognize that the admission of evidence of uncharged criminal conduct is carefully limited because of the substantial danger that a jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of *Page 23 
whether he or she committed the crimes charged in the indictment. SeeState v. Schaim, 65 Ohio St.3d 51, 59, 1992-Ohio-31. However, in the instant case, T.E.'s testimony was properly admitted since it tended to show appellant's "scheme, plan or system" of abuse. N.E. testified that appellant's sexual abuse of her began in the same fashion, with him touching her under her shirt while sitting on his lap in front of the computer. T.E.'s testimony is also relevant to show how N.E.'s abuse was discovered.
 {¶ 58} The potential inflammatory or prejudicial nature of T.E.'s testimony is not sufficient to outweigh its probative value. The record reflects that the trial court gave the jury a limiting instruction on the permitted use of evidence relative to the commission of crimes other than the offenses charged in the trial. Additionally, even without the sister's testimony, the state provided substantial evidence of appellant's guilt on the offenses charged. We, therefore, find no abuse of discretion and overrule appellant's fifth assignment of error.
 V {¶ 59} As his sixth assigned error, appellant asserts that the trial court erred by allowing improper victim-impact testimony during the trial.
 {¶ 60} Victim impact evidence is excluded at trial because it is irrelevant and immaterial to the guilt or innocence of the accused — it mainly serves to inflame the passion of the jury. See State v.White (1968), 15 Ohio St.2d 146, 151. Nevertheless, the state is not wholly precluded from eliciting testimony *Page 24 
from victims that touches on the impact the crime had on the victims because "circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime." State v.Eads, Cuyahoga App. No. 87636, 2007-Ohio-539, citing State v.Williams, 99 Ohio St.3d 439, 2003-Ohio-4164.
 {¶ 61} We disagree with appellant's assertions that Dr. Feingold's testimony relating to the long term effects of sexual abuse on children amounts to inadmissible victim-impact evidence. As a physician who examined and treated the victim, Dr. Feingold can testify to the results of his examination, his diagnosis, and the course of treatment he recommended. Dr. Feingold did not testify to the specific effects appellant's sexual assaults had on N.E., he testified to his reasons for prescribing a specific course of treatment for N.E. that included counseling and therapy. The trial court did not err in admitting this testimony.
 {¶ 62} Appellant also objects to the state asking N.E.'s mother how the whole process had affected her and her family. The record shows the following:
 {¶ 63} "Q. Since April 11th of 2006, can you tell the ladies and gentlemen how this whole process has affected you and your family?
 {¶ 64} "A. It's a whole new level of acceptance. I never, never imagined something like this happening, and I have to continuously watch her moods. Sometimes she will be just fine and other times she's falling apart and, you know, you don't know if its just a hormonal teen thing or if its because of all this *Page 25 
that's gone on. I have to take her to counseling that she absolutely resents, but I know what is best for her. I want her 20 years from now to have a healthy relationship and sustain that and not have this come back and bite her."
 {¶ 65} We agree that this exchange is an example of victim-impact testimony that should not have been admitted during the guilt phase of the trial. However, we do not find this testimony to be sufficiently inflammatory or prejudicial to warrant reversal. Appellant's sixth assignment of error is overruled.
 VI {¶ 66} Appellant's seventh assigned error claims that the state improperly commented on his silence in violation of the Fifth Amendment to the U.S. Constitution, and deprived him of a fair trial when the prosecutor used a picture depicting a balancing scale tipped in the state's favor during closing argument, improperly suggesting to the jury that it should consider the quantity of the evidence presented instead of the quality.
 {¶ 67} In its closing argument, the state, via the prosecutor, used a PowerPoint presentation depicting a balancing scale with balanced weights and the word "Defense" and appellant's name on one side of the scale and "State of Ohio" with no names on the other side. As the prosecutor recounted each witness' testimony, a new image appeared adding the witness' name to the state's side of the scale thus tipping the balance each time in favor of the state. *Page 26 
By the end of the closing argument, the scale was tipped completely over to the state's side. The "Defense" weight still had only the one name on it while the state's weight had seven names listed and was twice the size of the "Defense" weight. Appellant objected and requested that a hard copy of each of the images be preserved for review by this court.
 {¶ 68} Appellant argues that the presentation amounts to an impermissible comment by the state on his decision not to testify. The state argues that this was a visual depiction of the state overcoming its burden of reasonable doubt, and not an improper comment on appellant's right to remain silent. It argues that with the addition of each witness' name, the image shows that the quality of the state's evidence became stronger. We find the state's argument lacks merit.
 {¶ 69} The United States Supreme Court in Griffin v. California
(1965), 380 U.S. 609, held that a prosecutor's comments regarding a defendant's refusal to testify violated the self-incrimination provisions of the Fifth Amendment which was made applicable to the states by the Fourteenth Amendment. In State v. Thompson (1987),33 Ohio St.3d 1, the Supreme Court of Ohio explained: "Comments by prosecutors on the post-arrest silence or refusal to testify by defendants have always been looked upon with extreme disfavor because they raise an inference of guilt from a defendant's decision to remain silent. In effect, such comments penalize a defendant for choosing to exercise a constitutional *Page 27 
right. Prosecutors must therefore take care not to equate the defendant's silence to guilt. Further, they must be aware that where such comments work to the material prejudice of the defendant, they will not be tolerated." Id. at 8 (internal citations omitted).
 {¶ 70} Improper-comment cases have been divided into two categories. See State v. Clark (1991), 74 Ohio App.3d 151, 156. The first category involves cases in which the prosecutor comments directly and adversely on the defendant's failure to testify. The second category involves cases such as the instant one, where the alleged infringement consists of statements that refer only indirectly to the defendant's decision not to take the stand. The Ohio Supreme Court has recognized a two-prong analysis to be applied to the second category of cases to determine whether a comment is improper: "A helpful test in determining whether the above comment improperly indicated that the defendant failed to testify on his own behalf at trial is to determine `* * * whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" State v. Ferguson (1983),5 Ohio St.3d 160, 162, citing State v. Cooper (1977), 52 Ohio St.2d 163, 173.
 {¶ 71} Upon review of the state's closing argument and the PowerPoint slides, we are not convinced that the prosecutor's presentation was manifestly intended as a comment on appellant's silence. Neither do we find that the visual *Page 28 
depiction of the scale is of such a character that the jury would naturally and necessarily take it as a comment on appellant's failure to testify.[1]
 {¶ 72} We find more troubling the possibility that the use of the scale suggests to the jury that appellant had the burden to produce evidence to counterbalance that which the state produced and that he failed to do so by not presenting a case. The prosecution's presentation depicts the state's side of the scale, with seven names, weighing heavily against the defendant's side, with only his name. Such an attempt by the state to shift the burden of proof is clearly improper. See Mullaney v. Wilbur (1975), 421 U.S. 684; In re Winship (1970),397 U.S. 358. Due process requires the prosecution to prove, beyond a reasonable doubt, every element necessary to constitute the crime with which the defendant is charged. In re Winship, supra. Also improper is the inference that somehow the number of witnesses, or quantity of the evidence produced by the state, relates to the quality of the state's evidence against the accused. Accordingly, we find the trial court erred in overruling appellant's objection and permitting the jury to view the state's PowerPoint presentation.
 {¶ 73} A prosecutor's improper comments, however, do not require automatic reversal of the accused's conviction. The Supreme Court of Ohio has *Page 29 
cautioned that prosecutorial misconduct constitutes reversible error only in "rare instances." State v. Keenan (1993), 66 Ohio St.3d 402,405, quoting State v. DePew (1988), 38 Ohio St.3d 275, 288. "The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." State v. Jackson,92 Ohio St.3d 436, 441, 2001-Ohio-1266. The test for prejudice regarding prosecutorial misconduct is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."State v. Hartman, 93 Ohio St.3d 274, 295, 2001-Ohio-1580. To establish prejudice, the defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. State v. Loza (1994),71 Ohio St.3d 61, 83, 1994-Ohio-409. An appellate court must examine the prosecution's closing argument in its entirety to determine whether the remarks prejudiced the defendant. State v. Keenan, supra, at 410.
 {¶ 74} A review of the entire record convinces us that, while the prosecutor's presentation at closing was clearly improper, it did not affect the outcome of the trial. The evidence supporting appellant's guilt was substantial. The victim's testimony was compelling without the state's other six witnesses. Additionally, immediately following appellant's objection, the trial court gave the jury a curative instruction during the presentation, reminding the jury that it was the quality of the evidence that mattered, not the quantity. The court *Page 30 
specifically instructed: "So don't take a representation of a scale in this diagram as indicating anything other than the quality of the evidence and also keep in mind that the defendant has no burden." The Ohio Supreme Court has held, "juries are presumed to follow and obey the curative instructions given by a trial court." State v. Franklin (1991),62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960;State v. Garner, 74 Ohio St.3d 49, 59, 1995-Ohio-168.
 {¶ 75} Although the curative instruction alone may not have been sufficient to overcome the impropriety of the presentation, the instruction, coupled with the state's direct evidence, compels us to consider the error harmless beyond a reasonable doubt in this particular case. While we conclude that the presentation was not prejudicial error here, we are deeply troubled by the use of such improper inferences which, like other impermissible comments, under a different set of circumstances could require that a conviction be reversed. See, e.g.,State v. Belcher (Sept. 21, 2000), Franklin App. No. 99AP-620 (finding the evidence against defendant was not so overwhelming that the prosecution's comment was harmless beyond a reasonable doubt).
 {¶ 76} Appellant's seventh assignment of error is overruled.
 VII {¶ 77} In his eighth assignment of error appellant asserts that the trial court erred by not merging the kidnapping, gross sexual imposition, and rape *Page 31 
convictions. He argues that all of the offenses are allied offenses of similar import that should be merged.
 {¶ 78} R.C. 2941.25 provides:
 {¶ 79} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 80} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 81} To avail himself of the benefits of merger under R.C. 2941.25, appellant must demonstrate that his conduct constituted allied offenses of similar import, and, that the offenses were not committed separately or with a separate animus.
 {¶ 82} The test for determining whether multiple offenses are allied offenses of similar import was established in State v. Logan (1979),60 Ohio St.2d 126, 129, where the court stated, "in order for two crimes to constitute allied offenses of similar import, there must be a recognized similarity between the elements of the crimes committed. The offenses and their elements must *Page 32 
correspond to such a degree that commission of the one offense will result in the commission of the other."
 {¶ 83} Gross sexual imposition is a lesser included offense of rape.State v. Johnson (1988), 36 Ohio St.3d 224, paragraph one of the syllabus. Consequently, a defendant may not be convicted of both gross sexual imposition and rape when the counts arise out of the same conduct. State v. Foust, 105 Ohio St.3d 137,162, 2004-Ohio-7006. However, where the evidence shows the acts of gross sexual imposition were separate and distinct from the acts of rape, the defendant may be convicted of each. Id.
 {¶ 84} In the instant case, the evidence shows that the acts of gross sexual imposition were separate and distinct from the acts of rape. N.E. testified that at first appellant rubbed her stomach and then placed his hands under her shirt and under her pants line. She also testified to instances where appellant forced her to touch his penis or to rub his penis after he had showered. She testified to times when he would touch her vagina with his fingers. This constitutes conduct separate and distinct from rape. Under these facts, gross sexual imposition differs from rape, and, therefore, appellant could be convicted of both.
 {¶ 85} In Logan, the court established guidelines to determine whether kidnapping and another offense are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). TheLogan court stated: *Page 33 
 {¶ 86} "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 {¶ 87} "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at the syllabus.
 {¶ 88} In asserting that the kidnapping offenses must be merged, appellant argues that there is no evidence of restraint or movement of the victim, or that any such movement or restraint is merely incidental to the underlying offenses. We find no merit to this argument.
 {¶ 89} N.E. slept in the basement with her sister and two brothers. Appellant woke N.E. up in the middle of the night and forced her to go upstairs with him. N.E. testified that if she tried to ignore appellant when he woke her up, he would just come back downstairs and shake her or remove her covers until she got up and followed him. Appellant intentionally singled out N.E. and took her away from her siblings at night when everyone was sleeping and no one would see them. This movement was substantial. Appellant used his position of *Page 34 
authority and the secretive night-time trips to groom N.E. for his sexual abuse. We find that in doing so, appellant restrained his victim for prolonged periods of time, and the restraint was not merely incidental to committing rape. Also, there existed a separate animus as to each offense sufficient to support separate convictions.
 {¶ 90} Appellant's eighth assignment of error is overruled.
 VIII {¶ 91} In his ninth assignment of error, appellant asserts that the trial court erred by permitting the state to amend the indictments after resting its case in chief. The record reflects that the original indictments specified that the offenses were alleged to have occurred from March 1, 2005 to March 24, 2006. At the close of the state's case, and over appellant's objection, the judge permitted the indictments to be amended to include dates between March 1, 2005 and March 31, 2006 finding that the amendment did not change the title of the offense, and was not prejudicial to appellant.
 {¶ 92} Crim. R. 7(D) provides that the trial court "may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." *Page 35 
 {¶ 93} In State v. McBooth, Cuyahoga App. No. 82811, 2004-Ohio-1783
and State v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632, this court addressed similar situations where the prosecutor amended the date in the indictment to expand the date the alleged sexual conduct occurred and found such amendments to be permissible. Both decisions found that the date was not crucial to the indictment. In Shafer, the court stated:
 {¶ 94} "[T]he grand jury could have easily concluded that Shafer engaged in the conduct for which he was convicted, albeit the specific conduct may have turned out to have taken place at some later time than originally specified in the indictment, but not necessarily in any different manner or in any different place."
 {¶ 95} In the instant case, the date of the offense was not a crucial element. The indictments alleged sexual offenses occurring over a one year time period. The amendment merely added one week to the time frame during which the alleged offenses were committed. It did not alter the name or identity of the crime charged; it added no new language, nor did it add any additional elements that the state was required to prove. Accordingly, appellant's ninth assignment of error is overruled.
 IX {¶ 96} In his tenth and final assigned error, appellant challenges the trial court's imposition of a sexual predator label on him. He argues that the record *Page 36 
does not support the finding by clear and convincing evidence that he is likely to engage in one or more sexually oriented offenses in the future, therefore, his classification as a sexual predator must be reversed.
 {¶ 97} In State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Supreme Court of Ohio set forth the standard of review for a sex-offender classification, stating:
 {¶ 98} "Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." Id. at the syllabus.
 {¶ 99} The civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. Id. at 388. Under the civil standard, the reviewing court has an obligation to presume that the findings of the trier of fact are correct. Id.
 {¶ 100} The state must prove that an offender is a sexual predator by clear and convincing evidence. R.C. 2950.09(B)(4).[2]
R.C. 2950.09(B)(3) lists a number of factors for a court to consider in determining whether a sexual offender is a *Page 37 
sexual predator. The factors include (1) the offender's age, (2) the offender's criminal record, (3) the age of the victim, (4) whether there were multiple victims, (5) whether the offender used drugs or alcohol to impair the victim, (6) if the offender has previously been convicted of a crime, whether he completed his sentence, and if the prior offense was a sexually oriented offense, whether he completed a sex-offender program, (7) whether the offender has a mental illness or disability, (8) the nature of the offender's sexual contact with the victim and whether it was part of a pattern of abuse, (9) whether the offender displayed cruelty or made threats of cruelty, and (10) any other "behavioral characteristics" that contribute to the offender's actions. R.C. 2950.09(B)(3)(a) through (j). However, a court has discretion to determine what weight, if any, it will assign to each factor.Wilson at 385.
 {¶ 101} Here, the trial court based its determination that appellant is a sexual predator after carefully considering the statutory factors. First, while appellant was 40 years old at the time the offenses were committed and statistically less likely at that age to reoffend, the trial court specifically noted that appellant conducted himself and tried to make himself attractive to much younger people using slang, sexual language, and a suggestive photo on his MySpace webpage. Second, the trial court noted appellant's criminal history including drug cases, theft cases, and probation violations. Third, the trial court noted the victim was only 12-years-old at the time of the offenses and that *Page 38 
appellant had attempted to engage the victim's 16-year-old sister in similar sexual acts. The court then noted appellant's alcohol dependency. With respect to mental illness or disability, the court noted that appellant was diagnosed as a pedophile and with antisocial personality disorder. The trial court looked at the nature of the sexual contact and noted the progression from fondling to digital penetration, to intercourse. The court found that appellant used his position of authority as a father figure in the house to threaten and manipulate the victim and used his authority in a psychologically cruel way.
 {¶ 102} Appellant argues that since he has no history of prior sexual offenses and the results of the Static-99 test placed him in the "Moderate-Low" risk category for sexual recidivism, the court's classification is in error. This court has previously questioned the utility of the Static-99 evaluation as a diagnostic tool for individual risk assessment. "The evaluation merely performs an actuarial assessment of an offender's chances of reoffending. While actuarial risk assessments are said to outperform clinical risk assessments, actuarial assessments do not, and cannot, purport to make a prediction of a particular offender's future conduct." State v. Pierce, Cuyahoga App. No. 88470, 2007-Ohio-3665, at footnote 1, quoting State v. Ellison, Cuyahoga App. No. 78256, 2002-Ohio-4024. Thus the test has limited usefulness and is only one of the factors to be considered by the trial court. *Page 39 
 {¶ 103} The trial court expressly considered the relevant factors pursuant to R.C. 2950.09(B)(3) and discussed them on the record. There was more than sufficient evidence to find by the clear and convincing standard that appellant should be classified a sexual predator. As a result, appellant's final assignment of error is overruled.
 {¶ 104} For the foregoing reasons, we affirm appellant's convictions and the resultant sentences for five counts of rape as charged in counts 1 through 5, five counts of gross sexual imposition as charged in counts 14 through 18, and ten counts of kidnapping as charged in counts 27 through 36. We reverse his convictions on the remaining counts.
This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that the parties bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and *Page 40 
MARY EILEEN KILBANE, J., CONCUR
[1] It is important to note that this finding is heavily influenced by the fact that appellant's name, located on one side of the scale, remains throughout the presentation. If his name were not present and the defense side of the scale remained empty while the state continued to fill its side of the scale with evidence the state presented at trial, arguably this finding would be different.
[2] This section has since been repealed effective January 1, 2008 and replaced with new statutory classifications for sexual offenders. See R.C. 2950.01. However, we review this appeal under the statute in effect at the time of appellant's classification. *Page 1