JOURNAL ENTRY and OPINION
{¶ 1} Michael Wilson (appellant) appeals his conviction of felonious assault with a firearm specification and having a weapon under disability, and his 17 1/2-year prison sentence. After reviewing the facts of the case and pertinent law, we reverse and remand to the lower court for a new trial.
 I. {¶ 2} In the early morning hours of July 24, 2004, appellant arrived at his friend Charles Lloyd's house to attend an after-hours party. Within a short time, Darnell Martin (the victim) arrived at the party. Appellant and the victim had known each other for years, but were currently not speaking to one another. Both appellant and the victim drank alcoholic beverages at the party and went outside to Lloyd's driveway, where a fist fight ensued. A small crowd, including two of the victim's brothers, gathered around the two, and at one point Lloyd went into his house and returned with a gun and a bulletproof vest. The gun was passed to Bryan Galloway and eventually ended up in appellant's hands. Appellant shot the victim in the neck at close range. The victim survived, but suffered nerve damage in his arm and hand.
 {¶ 3} According to appellant, one of the victim's brothers pulled out a gun and it dropped on the ground. The victim picked the gun up and aimed it at appellant. Appellant immediately grabbed the gun that Galloway had and shot the victim in self-defense. However, according to the state, appellant possessed the gun for some time between a few and 45 seconds prior to firing it at the victim, who tried to talk appellant out of shooting him. The state maintains that appellant did not shoot the victim in self-defense.
 {¶ 4} On November 9, 2004, appellant was indicted for one count of attempted murder, two counts of felonious assault with firearm specifications, and one count of having a weapon while under disability. Following a jury trial, appellant was found guilty of two counts of felonious assault in violation of R.C.2903.11, with firearm specifications, and one count of having a weapon while under disability in violation of R.C. 2923.13. He was acquitted of the attempted murder charge. The court imposed an eight-year prison term for the felonious assault counts, three years for the firearm specifications, five years for having a weapon under disability, and 18 months for a community control violation, all to run consecutively, for an aggregate sentence of 17 1/2 years.
 II. {¶ 5} In his first assignment of error, appellant argues that he "was denied his rights to due process and a fair trial under the state and federal constitutions when the court erred in allowing into evidence the inadmissible and unfairly prejudicial testimony of Ms. Butler's attempt to bribe a state's witness." Specifically, appellant argues that the court erred when it allowed the victim to testify that appellant's former girlfriend, Imani Butler, attempted to bribe the victim into not testifying against appellant at trial.
 {¶ 6} Attempts by a third party to bribe a witness are only admissible when it can be proven that the accused was connected to the attempted bribe. State v. Walker (1978),55 Ohio St.2d 208, citing Mefford v. State (1920), 13 Ohio App. 106; Statev. Nicholson, Cuyahoga App. No. 84527, 2005-Ohio-1703. A bribe that is not known or authorized by the accused is generally too prejudicial to admit into trial because it may seem to a jury as if the accused must be guilty of the charges against him.
 {¶ 7} In the instant case, appellant argues that the state produced no evidence that appellant had anything to do with Butler's attempted bribery and that the evidence had the effect of making appellant appear guilty in the eyes of the jury. The state argues that when Butler attempted to bribe the victim, she told him that appellant said the victim never had a gun; therefore, appellant must have been involved in the attempted bribe because Butler must have gotten that information from appellant. However, this argument shows nothing more than appellant possibly spoke with Butler about the shooting. A careful review of the record shows that nothing was offered into evidence showing that appellant was connected to the attempted bribe. The state failed to produce Butler as a witness, and appellant testified that he had nothing to do with the attempted bribe.
 {¶ 8} Accordingly, we find that it was error for the court to allow the victim's testimony regarding Butler's attempted bribe, and appellant's first assignment of error has merit.
 III. {¶ 9} In his second assignment of error, appellant argues that his "state and federal constitutional right to confront the witnesses against him was violated when the hearsay statements of Imani Butler, Bryan Galloway and Charles Lloyd,[1] none of whom testified, were introduced against him." Specifically, appellant argues that the court erred by allowing the victim to testify about what Butler said to him during the attempted bribe and by allowing Cleveland police detective Joseph Daugenti to testify about what Galloway said to him during his investigation regarding whether appellant and the victim did or did not have guns during their skirmish.
 {¶ 10} Generally, the admission or exclusion of relevant evidence is within the sound discretion of the trial court, and its decision cannot be reversed absent a showing of an abuse of that discretion. State v. Combs (1991), 62 Ohio St.3d 278;State v. Sage (1987), 31 Ohio St.3d 173. However, hearsay, which is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," is not admissible evidence. Evid.R. 801, 802. The rule against hearsay is a constitutional safeguard stemming from the Sixth Amendment's confrontation clause, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." See, also, Crawford v. Washington
(2004), 541 U.S. 36 (holding that testimonial statements of witnesses absent from trial are admitted only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine the witness).
 {¶ 11} In response to appellant's arguments, the state contends that appellant did not object to the testimony at trial; therefore, the right to appeal is waived except for plain error. In the alternative, the state argues that the testimony was not offered to prove the truth of the matter asserted; therefore, it was not hearsay and was properly admitted.
 {¶ 12} We first note that appellant did object to the victim's testimony about what Butler said to him during the attempted bribe. In addition, the testimony was offered to prove the truth of the matter asserted — that appellant told Butler that the victim never had a gun. This testimony would contradict appellant's theory that he acted in self-defense. The prosecutor argued as follows to the court in support of allowing this evidence into the trial: "* * * but it was clear to me that on the tape Imani Butler says words, again, to the effect of: He never said you had a gun. Maybe somebody had a gun, but he never said it was you." Interestingly, we also note that the court sustained defense counsel's first hearsay objection. The remainder of the testimony that is under scrutiny is as follows:
"Q: All right. This is a question I'd like you to answer just yes or no. Did [Butler] indicate to you that she knew details of this case?
MR. LEVINE: Objection, Your Honor.
THE COURT: Overruled.
Q: Just yes or no.
A: Yes.
* * *
Q: This is, again, a yes or no. Did she indicate to you whether or not she — what her opinion was whether or not you had a gun; yes or no?
A: Yes.
Q: Was her opinion consistent with your testimony of not having a gun?
MR. LEVINE: Objection, Your Honor.
THE COURT: Overruled.
A: Yes."
 {¶ 13} We do find that this testimony constitutes hearsay, and that the state offers no exception to the rule against hearsay as to why it should be admissible. Furthermore, appellant did not have a prior opportunity to cross-examine Butler, as the state did not call her as a witness. Additionally, as discussed in appellant's first assignment of error, the court erred when it allowed this testimony regarding the attempted bribe, hearsay or not.
 {¶ 14} Appellant also claims that the court erred when it allowed the following testimony by Detective Daugenti regarding Galloway's statement during the investigation of the shooting:
"Q: In — in Bryan Galloway's statement, and just a yes or no answer if you can, detective, did he indicate in his statement whether or not Darnell Martin ever had a firearm on his person?
A: No.
Q: All right. Well, rephrase it. Did he ever indicate to you whether or not he had a statement — did he ever talk about that in his statement, whether Darnell Martin had a gun on him? A: He did talk — he did not mention Darnell having a gun."
 {¶ 15} We note that appellant did not object to this particular line of questioning regarding Galloway's statements, although appellant did object to similar testimony during Detective Daugenti's re-direct examination. The court overruled appellant's objection. Errors which are not objected to at trial are waived and may not be raised on appeal, unless they rise to the level of plain error. State v. Campbell (1994),69 Ohio St.3d 38; Crim.R. 52(B). "Under a plain error analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial would clearly have been different." State v. Parker (Oct. 5, 1995), Cuyahoga App. No. 68156, citing State v. Kent (1980), 68 Ohio App.2d 151.
 {¶ 16} In the instant case, Detective Daugenti testified that Galloway did not mention that the victim had a gun. That Galloway did not mention another gun in his statement to the police does not establish that there was not another gun at the scene. Once again, the state makes no argument as to why this hearsay testimony should be admissible at trial, and appellant was not afforded an opportunity to confront the witnesses against him. Accordingly, appellant's second assignment of error is sustained.
IV.
 {¶ 17} In his third assignment of error, appellant argues that "the trial court erred in refusing to give defendant's requested instruction on self-defense to the charge of having a weapon under disability, thereby depriving him of his constitutional right to due process of law." Specifically, appellant argues that under State v. Hardy (1978),60 Ohio App.2d 325, he should not have been convicted of having a weapon under disability because he used a gun that he did not previously possess in a fleeting moment of self-defense. Appellant argues that the court made a procedural error in not applying Hardy,
because the court should have instructed the jury to take self-defense into consideration when deciding whether appellant had a weapon while under disability.
 {¶ 18} R.C. 2923.13, which addresses having a weapon while under disability, provides in part as follows: "(A) * * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * (3) [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *." This statute prohibited appellant from using a firearm because he was convicted of a drug offense in 2003. However, in Hardy, supra,60 Ohio App.2d at 330, we held that R.C. 2923.13 does not "restrict the right of an individual under disability from acting in self-defense, when he did not knowingly acquire, have, carry or use a firearm previously."
 {¶ 19} The operative facts in Hardy are substantially similar to appellant's version of the facts in the instant case. According to appellant, he grabbed the gun from Galloway as a last minute self-defense tactic when he saw that the victim had a gun. The state, on the other hand, alleges that appellant and the victim stood face to face, appellant grabbed the gun from Galloway while both parties continued to argue, and appellant held the gun for several seconds before raising it, saying, "Fuck it. Die, bitch," and shooting the victim. We do note the limited holding of Hardy, where we were "faced squarely with the question of whether the state may by law prohibit an individual under disability from utilizing an available firearm or dangerous ordnance in self-defense, when confronted with an overt physical threat or assault on his person by another individual with a deadly weapon."
 {¶ 20} Requested jury instructions should be given if "(1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the applicable law; and (3) the instruction is not covered in the general charge to the jury." State v. Edwards, Lake App. No. 2001-L-005, 2002-Ohio-3359. See, also, Crim.R. 30(A); State v. Comen
(1990), 50 Ohio St.3d 206. An appellate court is to review a trial court's decision regarding a jury instruction for an abuse of discretion. State v. Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 21} In the instant case, the court did instruct the jury on self-defense as applied to the attempted murder and felonious assault charges. However, the court refused to instruct the jury regarding self-defense as applied to the weapon under disability charge, under Hardy. Specifically, the court stated the following regarding its refusal:
"The statute doesn't make any exceptions. I'm not going to add that to the charge. The crime is what it is. And if the elements are met, then he'll be found guilty. But there is no affirmative defense. There are no exceptions saying, well, under these circumstances if you're a convicted felon you're allowed to have a gun. There's no such case law, there's no such statute, there's no exceptions made, and that's probably by design by the legislature. So I'm going to overrule your request to add any type of charge."
(Emphasis added.)
 {¶ 22} When charging the jury, the court defined and explained self-defense, and then stated, "the defense has raised what's called the affirmative defense of self-defense. That only applies to Counts 1, 2 and 3. There's no affirmative defense to Count 4, having weapon while under disability."
 {¶ 23} It is clear that the court erred by not recognizing Hardy when it stated "[t]here's no such case law." Because self-defense is relevant to the instant case, the instruction is a correct statement of the law put forth by Hardy, and it is not covered in the general charge to the jury. We find, therefore, that the court abused its discretion by refusing appellant's requested jury instruction. Appellant's third assignment of error is sustained.
 V. {¶ 24} In his fourth assignment of error, appellant argues that "the court's decision finding the defendant guilty of having a weapon under disability was not supported by sufficient probative evidence when he never `had' the weapon within the meaning of the statute."
 {¶ 25} Specifically, appellant argues that there was insufficient evidence for a jury to convict him of having a weapon under disability, because he did not legally "have" the gun.
 {¶ 26} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259. The elements of R.C. 2923.13 were discussed in the previous section of this opinion; in applying this statute to the self-defense scenario in the instant case, appellant argues that under Hardy, he did not "have" the gun. We disagree with appellant.
"As a matter of logic, in order to use the weapon, appellant was required to at least temporarily possess or temporarily `have' the weapon in his possession. It must be a fact that anyone who uses a weapon must be considered to `have' it, if only momentarily, although when one has a weapon, he need not necessarily use it.
"We conclude, therefore, that the moment at which appellant fired the gun, he technically came within the meaning of the term `have' as used in the statute."
Hardy, 60 Ohio App.2d at 328.
 {¶ 27} Taking this aspect of Hardy into consideration, the state put forth enough evidence for a jury to find that appellant violated R.C. 2923.13(A)(3) by having or using a weapon while under disability. Accordingly, appellant's fourth assignment of error is overruled.
 VI. {¶ 28} In his fifth assignment of error, appellant argues that he "was denied his constitutional right to a fair trial because of prosecutorial misconduct during the trial and at closing argument that unfairly prejudiced the defendant." Specifically, appellant argues that the prosecutor made prejudicial statements based on race and gender and characterized criminal defenses as frivolous and ridiculous during voir dire; and that he expressed personal opinions, demeaned defense counsel and urged the jurors to "take back the streets" during his closing argument.
 {¶ 29} Pursuant to Crim.R. 33(A), "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (2) Misconduct of the * * * prosecuting attorney * * *." Prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. State v. Mauer (1984),15 Ohio St.3d 239. In reviewing prosecutorial misconduct claims, we must keep in mind that "both the prosecution and defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v.Stephens (1970), 24 Ohio St.2d 76, 82. "Prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." State v. Lott (1990), 51 Ohio St.3d 160,166.
 {¶ 30} During voir dire in the instant case, the prosecutor asked potential jurors if they had any bias toward either the police or offenders because of their own experiences. When one juror expressed that he had been held up at gunpoint, the prosecutor asked him whether he had any animosity toward the police, such as "I told them who the guy was and they never did anything about it." Likewise, the prosecutor asked whether the juror could set aside his thoughts and feelings, even if the offender was "just some guy that looks like Mr. Wilson." Because the prosecutor's statements were made evenhandedly toward both the defense and the state, we find that they were not misleading.
 {¶ 31} Appellant also argues that the prosecutor characterized the defense as frivolous and ridiculous during voir dire. For example, he compared the criminal burden of proof — beyond a reasonable doubt — with a commuter's daily decision to drive across a bridge. While this might be an odd comment taken by itself, the effect of counsel's conduct must be considered in light of the entire case. See Maurer, supra,15 Ohio St.3d at 266. Whether counsel's arguments to the jury amount to misconduct rests "in the sound discretion of the trial court and where it is apparent from the peculiar facts and circumstances of the particular case that such discretion has not been abused a reviewing court will not ordinarily interfere." Golamb v.Layton (1950), 154 Ohio St. 305 at ¶ 4 of the syllabus.
 {¶ 32} Additionally, appellant argues that the prosecutor improperly expressed his personal opinion about the case during his closing argument. Specifically, appellant points to incidents where the prosecutor began sentences with phrases such as, "I don't know about you, but if it were me * * *," "I don't believe * * *," "I was quite confused * * *," and "I do know that * * *." As support for his argument, appellant cites State v.Liberatore (1982), 69 Ohio St.2d 583, 589-90, where the Ohio Supreme Court stated that it was misconduct when a prosecutor "expressed personal opinions as to the credibility of the witness * * * and the guilt of the accused." However, the prosecutor's personal opinion justifies reversal only when it "is expressed in such a manner as to permit the jury to infer that the opinion is based on the prosecutor's knowledge of facts outside the record."State v. Hoyle (1987), Summit App. No. 13129, citing State v.Stephens, supra, 24 Ohio St.2d 76; State v. Thayer (1931),124 Ohio St. 1. In reviewing the transcript, none of the prosecutor's statements that appellant brings to our attention refers to facts outside the record.
 {¶ 33} Finally, appellant argues that the following statement by the prosecutor was improper because it urged the jury to convict him so that people could take their community back from criminal offenders: "Ladies and gentlemen, the State of Ohio asks that you hold Michael Wilson accountable. Accountable for his actions, accountable for what has happened to Darnell Martin, and accountable to an entire community of people who could fall prey to these such events." In State v. Draughn (1992),76 Ohio App.3d 664, 671, an Ohio court held that a prosecutor "cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case."
 {¶ 34} We think that appellant is taking the prosecutor's comment in the instant case out of context. The prosecutor asked the jury to hold appellant accountable to his community for the specific offense he committed — she did not ask the jury to make an example of appellant as a statement of community abhorrence regarding crime in general.
 {¶ 35} The state argues that the prosecutor's comments were nothing more than an appropriate demonstration of zealous advocacy. The state further argues that the comments were harmless at best, as appellant was acquitted of attempted murder and convicted of the other charges based on the weight of the evidence. In summary, a review of the transcript shows that the prosecutor's comments, when looked at in light of the entire trial, did not amount to misconduct. Appellant's fifth assignment of error is overruled.
 VII. {¶ 36} In his sixth assignment of error, appellant argues that he "was denied his right to effective assistance of counsel when defense counsel failed to protect his rights before and during trial." Specifically, appellant argues that counsel's repeated failure to object throughout trial and his failure to request a bifurcated trial on the weapon under disability charge amounted to ineffective assistance of counsel.
 {¶ 37} In order to substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144. In Statev. Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v. Bradley (1989), 42 Ohio St.3d. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 38} In the instant case, because of the errors regarding prejudicial evidence, hearsay and jury instructions, whether appellant would have been acquitted of all the charges had defense counsel made more objections or requested a bifurcated trial becomes a moot issue. As such, pursuant to App.R. 12(A)(1)(c), we need not address this assignment of error.
 VIII. {¶ 39} In his seventh assignment of error, appellant argues that "the jury's verdict was against the manifest weight of the evidence." Specifically, appellant argues that because the victim had traces of cocaine and a high level of alcohol in his system on the night of the shooting, he was not credible as a witness. Appellant argues that this, coupled with the exclusion of the hearsay and bribery testimony from the courtroom, would have led the jury to properly acquit him of all the charges he faced.
 {¶ 40} Pursuant to App.R. 12(A)(1)(c), this assignment of error is made moot by our rulings on assignments of error one, two and three.
 IX. {¶ 41} Assignments of error eight through twelve have to do with sentencing issues and they read as follows:
"The court's independent findings of fact and resulting increase in sentence violated Mr. Wilson's sixth amendment right to have any disputed fact that would increase his penalty submitted to a jury."
"The trial court erred in making the finding that the conduct described in each count constituted the worst form of the offense, when that finding was not supported by the record."
"The trial court erred in making the seriousness and recidivism findings, thereby resulting in an unreasonably and unfairly long prison sentence."
"The trial court erred by failing to make a finding giving its reasons for imposing a sentence in excess of the maximum allowed for the offense of the highest degree."
"The trial court erred by ordering the defendant to serve consecutive sentences without making the required findings or stating on the record the reasons for the required findings."
 {¶ 42} Although appellant puts forth five assignments of error having to do with sentencing, he makes only three separate legal arguments: whether his sentence violated Blakely v.Washington (2004), 542 U.S. 296; whether the court failed to list on the record the findings and/or reasoning for imposing maximum sentences; and, whether the court failed to list on the record the findings and/or reasoning for imposing consecutive sentences.
 {¶ 43} Because we are reversing appellant's conviction and remanding this case for a new trial, appellant's sentence is vacated. See, also, State v. Foster, ___ Ohio St.3d ___,2006-Ohio-856. Assignments of error eight through twelve are made moot and will not be discussed, pursuant to App.R. 12(A)(1)(c).
Judgment reversed and cause remanded for a new trial.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J. and Kilbane, J., concur.
[1] We note that appellant makes no argument in the text of his brief, nor does he point to any specific pages in the transcript, about inadmissible hearsay statements of Lloyd. Therefore, we do not address this portion of his second assignment of error.