JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant, Marc Salahuddin (appellant), appeals his convictions for multiple counts of rape and gross sexual imposition. After reviewing the facts of the case and pertinent law, we affirm.
 I {¶ 2} The charges in this case are based on appellant allegedly repeatedly raping his stepdaughter, I.S., [1] from 1990 through 1993, when she was 11 to 14 years old. In 1990, appellant married Cassandra Richardson. Cassandra had a daughter, I.S., who was born in November 1978. According to I.S., appellant raped her multiple times at the family's apartment on West 22nd Street in Cleveland, subsequently raped her at another apartment on the corner of Lee Road and Scottsdale Boulevard, and at a third location in an apartment on Warrensville Center Road. Because of the sensitive nature of this case, additional facts relating to the sexual contact and conduct will be discussed as needed to address appellant's assignments of error.
 {¶ 3} Starting in 1993, appellant, Cassandra, and their children, including I.S., moved around the country because Cassandra was in the military. In June 1999, the family was living in Killeen, Texas. I.S., who was 20 years old at the time, was involved in an intimate relationship with appellant's brother, Robin. I.S. and Robin were living with appellant, Cassandra, and the children. Appellant and I.S. got into an argument that became physical, and appellant told I.S. and Robin to leave the house. *Page 4 
Appellant and I.S. were involved in another altercation shortly after this in a nearby parking lot. As a result, appellant was charged with, and pled no contest to, assault.
 {¶ 4} I.S. stayed with Robin in Texas until fall 2004, when she was admitted into the hospital for an emotional breakdown. She had no further contact with her mother or appellant. After her release from the hospital approximately one week later, I.S. moved back to Ohio to live with her maternal grandmother, Marilyn Davis. In July 2005, I.S. contacted Cleveland police detective Georgia Hussein, alleging that appellant assaulted her sexually from January 1990 through November 1993.
 {¶ 5} On June 26, 2006, appellant was charged with 103 counts, detailed as followed: ten counts of rape of a child under 13 years of age in violation of R.C. 2907.02(A)(1)(b); 12 counts of gross sexual imposition of a child under 13 years of age in violation of R.C. 2907.05(A)(4); 23 counts of rape by force in violation of R.C. 2907.02(A)(2); 23 counts of gross sexual imposition by force in violation of R.C. 2907.05(A)(1); and 35 counts of kidnapping in violation of R.C. 2905.01(A)(2).
 {¶ 6} The case went to trial and in April 2007, the court declared a mistrial after the jury deadlocked. On November 26, 2007, the case went to trial for a second time. Various counts had been dismissed after the first trial. On November 30, 2007, a jury found appellant guilty of seven counts of rape of a child under 13 years of age; seven counts of gross sexual imposition of a child under 13 years of age; one count of rape by force; and two counts of gross sexual imposition. On December 10, 2007, the court sentenced appellant to life in prison.
 II *Page 5 {¶ 7} In appellant's first assignment of error, he argues that "the indictment failed to distinguish multiple allegations of the same type of wrongful conduct lacking the specificity required under the state and federal constitutions and thereby violated Marc Salahuddin's rights to due process, notice, a unanimous jury verdict and the prohibition against double jeopardy." Specifically, appellant argues that the indictment provided "no information about when, where and what actually occurred," and that he lacked sufficient notice to defend against the allegations.[2]
 {¶ 8} Pursuant to R.C. 2941.03(E), the specific date on which an offense is alleged to have occurred is not required in an indictment. See, also, R.C. 2941.08(C) (stating that "[a]n indictment *** is not made invalid *** [f]or stating the time imperfectly"). In State v.Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321, we held the following:
 "`[W]here such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged.' This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse.' Thus, `an allowance for reasonableness and inexactitude *Page 6 
must be made for such cases considering the circumstances.'" (Internal citations omitted.)
 {¶ 9} Additionally, in State v. Lawrinson (1990), 49 Ohio St.3d 238,239, the Ohio Supreme Court stated that two things are taken into consideration regarding specific dates in an indictment. First, whether the state has more detailed information and second, "whether this information is material to the defendant's ability to prepare and present a defense." Id.
 {¶ 10} In the instant case, appellant argues that the vagueness of the multicount indictment violated his Sixth Amendment right to be informed of the nature of the charges against him. As support for his argument, appellant relies on Valentine v. Konteh (C.A.6, 2005), 395 F.3d 626. InValentine, the United States Court of Appeals for the Sixth Circuit affirmed the district court's granting habeas corpus relief to the defendant on all of his convictions, holding that the multiple, undifferentiated charges in the indictment violated the defendant's constitutional rights. Id. at 634. The Valentine court held that "[i]n its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described `typical' abusive behavior by Valentine and then testified that the `typical' abuse occurred twenty or fifteen times." Id. at 632-33.
 {¶ 11} The instant case can be distinguished from Valentine because I.S. testified in great detail about the multiple incidents of appellant raping her. Cf. State v. Hilton, Cuyahoga App. No. 89220, 2008-Ohio-3010
(holding that "unlike the victims *Page 7 
in Valentine or Hemphill, [the victim in Hilton] was able to recall details of specific incidents of sexual abuse by appellant. She was able to differentiate these incidents by the location where each occurred, giving details of incidents in the living room on the couch where appellant slept, in the office in front of appellant's computer, and in her mother's bedroom after appellant had taken a bath. Each one of these incidences [is] a separate and distinct offense sufficient to support a multi-count indictment").
 {¶ 12} In the instant case, I.S. testified in great detail about a number of separate incidents of abuse, including appellant squeezing her breast while she, Cassandra, and appellant were sleeping on a pull-out sofa bed at the West 22nd Street address; appellant "humping" her and putting "his erect penis against [her] buttocks" while they were lying on the sofa bed during the daytime; another episode on the sofa bed where appellant put his fingers on and in her vagina, leaving her with small cuts that were painful when she urinated; an episode when appellant sucked on her breast so hard that she bruised around her areola; the first time that appellant raped her with his penis, when she lost her virginity at age 11 in the downstairs apartment at the West 22nd Street address; and the time that she was menstruating and he inserted his fingers in her vagina at the downstairs apartment of the West 22nd Street address.
 {¶ 13} The state was very careful in asking I.S. about each instance of abuse and whether it was the same "episode" as other instances. For example, the following colloquy took place between the state and I.S.: *Page 8 
 "Q: You talked about instances where you would go to the bathroom and you had some cuts; fair to say?
 A: Yes.
 Q: Did that happen while you were in the upstairs apartment of West 22nd Street?
 A: Yes.
 Q: Did it happen more than once?
 A: Yes.
 Q: While you lived in that upstairs apartment?
 A: Yes.
 Q: Can you remember any comments or things that may have been said to you during these incidents in that upstairs apartment where he touched your vagina with his fingers and inserted them in your vaginal canal?
 A: Just, you know, did I like it. There wasn't a lot of talking, but just occasionally questions about whether or not I enjoyed what he was doing, you know, him emphasizing that I didn't need to tell anybody because I would be seen as a dirty girl; people wouldn't understand. And then everything was just kind of like [I.S. stopped talking].
 Q: Do you recall any of those events, either before, during, or after when the Defendant would — specifically when the Defendant would put his fingers inside your vagina? Anything that you may have been wearing or any dates or holidays or anything of significance?
 A: Are we talking about just in the upstairs apartment-
 Q: Right now for the moment, yes.
 A: It's just, a lot of the, in terms of what I remember as far as the certain incidents of the fondling of the vagina would be on that sofa couch. It was pulled out as a bed after we had watched these movies.
 The other times where there was him sucking on my breast and fondling my vagina would be when my mom was not home. Like, when all those things happened together, my mom wasn't home. And I remember — I keep *Page 9 
remembering, like, one time there was sunlight. So it was during the day. One of the incidents that I remember was during the day.
 Q: Now, was that a different day than that morning you told us about?
 A: Yes.
 Q: So that's a different incident at the upstairs apartment?
 A: Yes."
 {¶ 14} I.S. continued to describe distinct episodes when appellant sexually abused her at the studio apartment on Lee Road and Scottsdale Boulevard and at the apartment on Warrensville Center Road.
 {¶ 15} Accordingly, the instant case is distinguishable fromValentine, supra, as the evidence at trial was sufficient to show numerous incidents of sexual conduct and/or contact.
 {¶ 16} Appellant next argues that the state violated the prohibition against double jeopardy in the instant case, because his retrial should have been barred after various "carbon copy" charges in the indictment were dismissed under Crim. R. 29 during the first trial. As support for this argument, appellant relies on State v. Ogle, Cuyahoga App. No. 87695, 2007-Ohio-5066. Appellant's final argument under this assignment of error is that because of the vague indictment, it was impossible for the jury to reach a unanimous verdict on any of the individual counts against him. As support for this argument, appellant relies on State v.Johnson (1989), 46 Ohio St.3d 96. *Page 10 
 {¶ 17} The instant case is distinguishable from Ogle. InOgle, the defendant was charged with various sexual offenses. At trial, he was found guilty of three counts, not guilty of 13 counts, and the jury deadlocked on one count of rape. Appellant filed a motion to dismiss the mistried rape count, "on due process and double jeopardy grounds, because it was indistinguishable from the other two rape counts for which he had already been acquitted." Id. at ¶ 6. The court agreed with appellant, finding that the indictment was insufficient because there was no differentiation among the counts. Id. at ¶ 23. In the instant case, however, we held, supra, that the indictment was not defective because trial testimony clearly differentiated the multiple counts of rape and gross sexual imposition that occurred.
 {¶ 18} Finally, the court in the instant case complied with the mandates of Johnson, supra, as the jury instructions included a general instruction on unanimity. See Johnson at 104 (concluding that "the prevailing rule is, `a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability'") (internal citations omitted).
 {¶ 19} For the same reasons outlined under the Valentine line of cases, we find the instant case distinguishable from Ogle, supra. Additionally, appellant's argument regarding the unanimous jury verdict likewise fails. Appellant's first assignment of error is overruled.
 III. *Page 11 {¶ 20} In appellant's second assignment of error, he argues that "the evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of indicted counts because the evidence did not distinguish the multiple allegations of the same type of wrongful conduct."
 {¶ 21} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 22} In the instant case, appellant was convicted of the following two types of rape, in violation of R.C. 2907.02:
 {¶ 23} "(A)(1) No person shall engage in sexual conduct with another *** when *** (b) [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person"; and "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 24} In addition, appellant was convicted of two types of gross sexual imposition, which R.C. 2907.05 defines as follows:
 {¶ 25} "(A) No person shall have sexual contact with another, *** [or] cause another to have sexual contact with the offender *** when ***(1) [t]he offender purposely compels the other person *** to submit by force or threat of force"; [and] "(4) [t]he other person *** is less than thirteen years of age, whether or not the offender knows that age of that person." *Page 12 
 {¶ 26} Appellant's sole argument regarding insufficient evidence centers around indistinguishable allegations of multiple offenses. We thoroughly analyzed this argument, albeit in a different form, in appellant's first assignment of error. For the same reasons, we reject it here. Appellant's second assignment of error is overruled.
 IV. {¶ 27} In appellant's third assignment of error, he argues that "trial counsel's acts and omissions deprived Marc Salahuddin of his Sixth Amendment right to effective legal assistance." Specifically, appellant argues that his counsel was ineffective in the following seven ways: 1) failure to object to retrial on double jeopardy grounds; 2) failure to use I.S.'s testimony from the first trial for cross-examination during the second trial; 3) failure to object to "numerous instances of uncharged misconduct"; 4) failure to object to I.S.'s testimony that she had a nervous breakdown; 5) failure to object to a police officer's implications about corroborative evidence; 6) failure to object to the prosecutor's closing remarks; and 7) failure to object to Tonya Lilly's testimony at the second trial.
 {¶ 28} To substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v.Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. In State v. Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove *Page 13 
the second prong of prejudicial effect. State v. Bradley (1989),42 Ohio St.3d 136. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 29} We also note that, in general, counsel's failure to object may be seen as a trial strategy and does not necessarily amount to ineffective assistance of counsel. See State v. McWhorter, Cuyahoga App. No. 87443, 2006-Ohio-5438 (holding that "[strategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel").
 {¶ 30} Appellant's first allegation of ineffective assistance of counsel is rejected for the reasons outlined in our analysis of his first assignment of error.
 {¶ 31} In appellant's second allegation of ineffective assistance of counsel, he points to four incidents of what he refers to as "inconsistent" testimony by I.S. between the first trial and the second trial. Appellant argues that it was error for counsel to fail to point these inconsistencies out to the jury in the second trial. However, a careful reading of both of I.S.'s trial testimonies reveals slight differences that do not amount to inconsistencies. For example, appellant argues that I.S. testified in the second trial that during one incident, appellant put his fingers in her vagina while she had her period; however, when she testified about that same incident in the first trial, she failed to mention she was menstruating. In reading the first trial transcript, I.S. describes the detail of the incident and states that appellant *Page 14 
moved her sanitary pad to insert his fingers in her vagina. So, although I.S. does not specifically state that she had her period, she references a sanitary napkin. We find this alleged "inconsistency" to be irrelevant, not to mention trivial.
 {¶ 32} Another example of appellant claiming counsel was ineffective for failing to point out an inconsistency is appellant's allegation that at the first trial, I.S. stated that multiple sexual incidents took place between her and appellant at the Warrensville Center Road address; however, appellant claims that I.S. testified at the second trial that only one sexual act occurred there. This is not true. The following excerpt is from I.S.'s testimony at the second trial:
 "Q: Is this the only sexual act that occurred at the Warrensville Center Road address?
 A: No. But it's the only — it's the only act that I clearly remember."
 {¶ 33} Appellant's second allegation of ineffective assistance of counsel is without merit.
 {¶ 34} In appellant's third allegation of ineffective assistance of counsel, he argues that "the State introduced more improper other acts evidence than counsel on appeal is able to quantify ***." Appellant follows this up with only one specific example from the record: "testimony about an occurrence sometime after [I.S.] had gone off to prep school, while she and [appellant] were riding a Greyhound bus."
 {¶ 35} Evid. R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as *Page 15 
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In State v. Lowe (1994),69 Ohio St.3d 527, 531, the Ohio Supreme Court held that there are two situations in which other acts evidence of identity is admissible at trial:
 "First are those situations where other acts `form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are `inextricably related to the alleged criminal act.' State v. Curry (1975), 43 Ohio St.2d 66, 73, 72 O.O.2d 37, 41, 330 N.E.2d 720, 725.
 * * *
 "Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged. `Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid. R. 404(B).' State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus. `"Other acts" may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.' State v. Smith (1990), 49 Ohio St.3d 137, 141, 551 N.E.2d 190, 194.
 * * *
 "A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain modus operandi, *Page 16 
other-acts evidence must be related to and share common features with the crime in question."
 {¶ 36} We find no error with counsel's failure to object to the single statement that I.S. made regarding alleged abuse on a Greyhound bus, as it showed appellant's modus operandi or pattern of sexual abuse as it related to the victim.
 {¶ 37} In appellant's fourth allegation of ineffective assistance of counsel, he argues that counsel failed to object to I.S.'s unsupported testimony that she had a nervous breakdown. Specifically, appellant argues that I.S.'s testimony "involved a medical diagnosis or opinion" that she was not capable of giving, and that it "was irrelevant to the issues in the case ***."
 {¶ 38} Appellant cites no case law to show why this testimony should have been excluded. A reading of the transcript shows that I.S. did not give medical opinion testimony; rather, she answered the question of why she moved from Texas back to Cleveland. Furthermore, there is no showing that the outcome of the trial would have been different had defense counsel objected to this answer. Appellant's fourth allegation of ineffective assistance of counsel is without merit.
 {¶ 39} In appellant's fifth allegation of ineffective assistance of counsel, he argues that counsel failed to object to Cleveland police detective Hussein's testimony that, as part of her investigation into I.S.'s complaint, she interviewed other people who knew I.S. about I.S.'s behavior at the time. Appellant opines this was ineffective because it violated the hearsay rule. Appellant's argument is unsupported by the record. A review of Detective Hussein's testimony shows no hearsay statements *Page 17 
were made. Rather, the detective talked about the procedure for conducting an investigation when there were no witnesses to the abuse other than the victim. Accordingly, we reject appellant's fifth allegation of ineffective assistance of counsel.
 {¶ 40} In appellant's sixth allegation of ineffective assistance of counsel, he argues that counsel was ineffective by failing to object to the state's closing argument. As will be discussed in appellant's sixth assignment of error, infra, this line of argument is rejected.
 {¶ 41} In appellant's seventh and final allegation of ineffective assistance of counsel, he argues that counsel was ineffective for failing to object to Tonya Lilly's testimony at the second trial because she was present at the first trial. As support for this argument, appellant cites to Evid. R. 615, which states that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses ***." Nothing in this rule appears to apply to the unique situation at hand, as this rule acts to exclude a witness from hearing other testimony, not to preclude them from testifying at all.
 {¶ 42} Additionally, appellant fails to show how this alleged ineffective assistance of counsel prejudiced him. Appellant does not cite to or detail Lilly's testimony at the second trial, or show how, without this testimony, the result of the trial would have been different.
 {¶ 43} In summary, all seven incidents of alleged ineffective assistance of counsel fail the Strickland test, and appellant's third assignment of error is overruled.
 V. *Page 18 {¶ 44} In appellant's fourth assignment of error, he argues that "the trial court's evidentiary rulings allowing the prosecution to introduce irrelevant, inadmissible and extraordinarily prejudicial evidence violated Mr. Salahuddin's rights to due process and a fair trial."
 {¶ 45} The standard of review for admissibility of evidence is abuse of discretion. See Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296.
 {¶ 46} Appellant first argues that evidence of other acts is inadmissible under Evid. R. 404(B) "to prove the character of a person in order to show action in conformity therewith." This is the same argument appellant made in his third assignment of error, under an ineffective assistance of counsel theory. Again, appellant cites no specific examples of the "other acts" that he claims were admitted into evidence. We reject this argument for reasons already stated in our analysis ofState v. Lowe, supra. See, also, R.C. 2945.59 (stating that "[i]n any criminal case in which the defendant's motive or intent, *** scheme, plan, or system of doing an act is material, any acts of the defendant which tend to show [this] *** may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant"); State v. Donnal, Allen App. No. 1-06-31,2007-Ohio-1632 (allowing evidence of the defendant's prior sexual acts with the victim to be admitted under R.C. 2945.59 for the purpose of showing a plan or system).
 {¶ 47} Appellant's next argument under this assignment of error is as follows: "Through both Marilyn Davis and Tonya Lilly, the prosecutor introduced evidence that *Page 19 
[I.S.] had told them about the abuse ***." Appellant claims that this evidence amounted to hearsay; however, appellant fails to cite to the record or quote directly the statements in question. As there is nothing for us to review, we disregard this argument. See App. R. 12(A)(2) and 16(A)(7) (noting that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based ***").
 VI. {¶ 48} In appellant's fifth assignment of error, he argues that the "trial court erroneously precluded the defense from introducing important and relevant evidence that would have countered the prosecution's case violating Mr. Salahuddin's right to present a defense and confront witnesses under the Sixth Amendment." Specifically, appellant argues that it was error for the court to exclude "a document indicating that the Texas DCFS case was resolved in [appellant] and Cassandra's favor."
 {¶ 49} A careful combing of the record in the instant case shows that appellant did not attempt to introduce this document at the second trial. Appellant cites to page 1065 of the first trial transcript, where the court precluded the document from being presented to the jury. However, during the second trial, the court noted the following: "I don't know what other exhibits you've got that weren't used in the first trial, my decision stands on those." However, no mention is made of the specific document in question, nor did counsel proffer it. Additionally, the document itself was not made part of the record, and we have nothing to review. *Page 20 
 {¶ 50} Given this, we find no abuse of discretion by the trial court, and appellant's fifth assignment of error is overruled.
 VII. {¶ 51} In appellant's sixth assignment of error, he argues that "the prosecution's closing remarks arguing theories based on facts not in evidence and vouching for the credibility of the complaining witness constituted misconduct which violated Marc Salahuddin's rights under the Fifth, Sixth and Fourteenth Amendments of the Constitution."
 {¶ 52} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the defendant. State v.Smith (1984), 14 Ohio St.3d 13, 14. We review whether counsel's arguments to the jury amount to misconduct for an abuse of discretion.Golamb v. Layton (1950), 154 Ohio St. 305.
 "In reviewing prosecutorial misconduct claims, we must keep in mind that `both the prosecution and defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.' State v. Stephens (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. `Prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence.' State v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293."
State v. Wilson, Cuyahoga App. No. 86092, 2006-Ohio-1333, at ¶ 29. *Page 21 
 {¶ 53} Appellant first argues that the prosecutor improperly vouched for I.S.'s credibility. In the instant case, the prosecutor's closing argument included the following:
 "One witness, if believed by you, is sufficient to convict this Defendant. And I would submit to you that you had that witness in the form of [I.S.] who you had the benefit of seeing for over a day. Extensive cross-examination. Extensive testimony. Candid testimony.
 "She's the witness who's convinced you beyond a reasonable doubt. Because I know when you listened to her, you knew it in your gut, you knew it as you listened to her details and her description about that penis in her mouth. You felt it inside of you, and you felt it because you were convinced.
 "You felt disgust. You felt the rage and you felt her helplessness. If you felt it it's because you believed it."
 {¶ 54} In State v. Wilson, supra, at ¶ 32, we held that while it may have been misconduct when a prosecutor expressed personal opinions as to witnesses or defendants, "the prosecutor's personal opinion justifies reversal only when it `is expressed in such a manner as to permit the jury to infer that the opinion is based on the prosecutor's knowledge of facts outside the record.'" (Internal citations omitted.)
 {¶ 55} We also note that counsel failed to object to the prosecutor's closing remarks in the instant case, thus, appellant has waived all but plain error regarding these comments. State v. Slagle (1992),65 Ohio St.3d 597.
 "Pursuant to Crim. R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long, supra, 53 Ohio St.2d 91, 7 Ohio Op. 3d 178, 372 N.E.2d 804, paragraph three of the syllabus. *Page 22 
 `Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.' State v. Moreland (1990), 50 Ohio St. 3d 58, 62, 552 N.E.2d 894, 899." State v. Phillips (1995), 75 Ohio St.3d 72, 83.
 {¶ 56} In the instant case, the prosecutor bolstered her own witness by suggesting that the candid detail of I.S.'s testimony showed that she was being truthful. See State v. Davenport (Jan. 8, 1999), Montgomery App. No. 17098 (holding that "prosecutors can comment on the credibility of witnesses based on their in-court testimony").
 {¶ 57} Appellant next argues under this assignment of error that "the prosecutor introduced facts and expert opinion testimony about child psychology and memory that was not introduced into evidence at trial." Appellant points to parts of the record in which the prosecutor argued to the jury that just because I.S. did not remember every incident of sexual abuse in chronological order, that does not mean the abuse did not happen. Appellant argues that a child psychologist or memory expert was not called to testify about a child's recollection of events. Appellant cites no case law to support his argument. A review of the closing remarks reveals that nothing the prosecutor commented on was based on facts not in evidence. In addition, the court instructed the jury that "[t]he opening and closing argument of counsel are designed to assist you. They are not evidence."
 {¶ 58} In summary, we do not find the prosecutor's closing remarks improper and, even assuming arguendo that they were, appellant makes no showing that they *Page 23 
prejudicially affected his substantial rights. Appellant's sixth assignment of error is without merit.
 VIII. {¶ 59} In appellant's seventh and final assignment of error, he argues that "Ohio's reasonable doubt standard invites the jury to find on less than proof beyond a reasonable doubt thereby violating his right to liberty without due process of law."
 {¶ 60} R.C. 2901.05 governs the burden and degree of proof required for criminal trials, and it defines "reasonable doubt" as follows:
 "(E) `Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. `Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs."
 {¶ 61} The Ohio Supreme Court, in State v. Davis, 116 Ohio St.3d 404,431, 2008-Ohio-2, recently held that if jury instructions conformed to R.C. 2901.05, "whose constitutionality we have repeatedly affirmed," no error was committed. See, also, State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160; State v. Stallings, 89 Ohio St.3d 280, 2000-Ohio-164;State v. Frazier (1995), 73 Ohio St.3d 323.
 {¶ 62} In the instant case, the instructions given to the jury regarding reasonable doubt mirror the language of R.C. 2901.05. In following course with a long line of Ohio Supreme Court jurisprudence, we hold that this statute defines *Page 24 
reasonable doubt sufficiently. Appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., CONCURS;
COLLEEN CONWAY COONEY, A.J., CONCURS IN JUDGMENT ONLY.
[1] The victim is referred to herein by her initials in accordance with this court's established policy regarding nondisclosure of identities in cases involving sexual offenses.
[2] Essentially, appellant maintains the indictment should have been dismissed for insufficiency. "The trial court is limited in its review of the indictment process insofar as it cannot inquire into the sufficiency of the evidence to support the indictment." State v.Hodel (Aug. 16, 1990), Cuyahoga App. No. 57069 (internal citations omitted). Appellant did not file a motion to dismiss the indictment, and in the absence of an objection, we employ a plain error analysis in reviewing this argument. See Crim. R. 52. *Page 1