JOURNAL ENTRY AND OPINION *Page 3 
Procedural History of the Case
 {¶ 1} Appellant was originally indicted in October 2004 in case number CR-457330 on ten identically-worded counts of gross sexual imposition and one count of kidnapping with a sexual motivation specification. The indictment stated that the date of the offenses was from January 1, 1998 to December 31, 2004. That case was dismissed by the State.
 {¶ 2} A second indictment was filed against appellant in September 2005. That indictment charged appellant with ten identically-worded counts of gross sexual imposition, four identically-worded counts of kidnapping and three identically-worded counts of rape of a victim less than 13 years of age. The indictment stated that the date of the offenses was from January 1, 1998 to December 31, 2004.
 {¶ 3} The case proceeded to a jury trial on November 14, 2005. The jury received its charge and began its deliberations on the afternoon of November 21, 2005. The following day, November 22, the jury requested a transcript of the victim's testimony. The next day, November 23, the jury wrote a note to the court indicating that it was deadlocked on one of the counts. With the consent of the parties, the trial court learned that the undecided count was count 17, rape. The court indicated that it was its intention to declare a mistrial on count 17. Appellant objected, requesting that the court read the Howard charge to the jury and instruct them to continue deliberations on count 17. *Page 4 
 {¶ 4} After inquiring of the jury foreman as to his opinion of whether the jury could reach a verdict, the court accepted the verdict forms as to counts one through 16 and declared a mistrial on count 17, over the defense's objection.
 {¶ 5} The jury found appellant guilty on two counts of gross sexual imposition and one count of kidnapping and acquitted him on the remaining charges, i.e., eight counts of gross sexual imposition, three counts of kidnapping and two counts of rape. Appellant was sentenced to one-and three-year terms for the two gross sexual imposition counts and five years for the kidnapping count, all to be served concurrently.
 {¶ 6} Post-trial and pre-sentence, appellant filed a motion to dismiss count 17, the mistried rape count, on due process and double jeopardy grounds, because it was indistinguishable from the other two rape counts for which he had already been acquitted. Appellant also filed a post-trial and pre-sentence motion to vacate the convictions on gross sexual imposition and kidnapping on grounds of due process and double jeopardy, because the allegations in the indictment and the bill of particulars consisted of vague, carbon copy claims. The court denied both motions. However, the State itself, subsequent to the court's post-trial denial of the motion to dismiss, dismissed the rape charge "without prejudice." Mindful that the language "without prejudice" could result in re-indictment of the appellant, we proceed to review the court's ruling on the motion to dismiss.
 The Facts of the Case *Page 5 {¶ 7} The testimony at trial established that, after appellant and his first wife divorced, appellant married Debra Ogle, who had two young daughters from a previous marriage. Appellant participated in the raising of his step-daughters. One of the step-daughters, Cindy, and her husband Jorge, have three daughters, one of whom, A.P., is the alleged victim in this case.
 {¶ 8} In August 2004, A.P., then seven years old, slept over a friend's house. As the girls were getting ready for bed, the friend's mother heard them whispering and had a "hunch" what they were talking about. The next morning, the friend's mother asked her daughter what she and A.P. had been whispering about. As a result of that conversation, the friend's mother spoke to her husband, who then went to Cindy and Jorge's house, where he spoke with Jorge. Jorge then told Cindy. Cindy, who claimed to have been molested as a child, was "majorly stressed out," "devastated," and crying when told of the suspicion that A.P. had been molested. Cindy questioned A.P. about whether appellant had ever touched her. According to A.P., her mother seemed relieved when she told her that appellant had touched her. Cindy told A.P. that appellant was wrong for touching her and she was proud of A.P. for telling. A.P. testified that her mother hugged her and made her feel good.
 {¶ 9} Cindy later called Officer Darnell, a family friend and retired police officer. Officer Darnell came to the house and questioned A.P. Upon Officer Darnell's advice, Cindy called 696-KIDS, whose staff recommended calling the Strongsville police; appellant resided in Strongsville, and the alleged abuse occurred in his home. *Page 6 
Through 696-KIDS, the family was referred to social worker Dana Huddleston and therapist Rivienne Levin. During one of the therapy sessions in May 2005, Levin asked A.P. to draw a picture of what happened. A.P. drew two pictures of appellant and herself with each other's hands on their genital areas. In at least one of the pictures, appellant was smiling and A.P. was crying. Levin thanked A.P. and told her she was "brave." The drawings were admitted into evidence over the defense's objection.
 {¶ 10} A.P. testified that when she slept over her grandparents' house, and she and appellant would be in the basement watching television, appellant would touch her private areas. She testified that appellant rubbed her breast underneath her clothes and rubbed his hand on her genital area "a couple times." Initially, A.P. testified that appellant did not touch any other parts of his body to her body, but then testified differently when questioned about the new allegations she made in July 2005.[1] In particular, in July 2005, A.P. alleged for the first time that appellant digitally penetrated her "a couple times" (rape), and put his mouth on her genital area one time (rape). A.P. also claimed that appellant touched her more than ten times. She testified that this abuse started when she was six years old. No further testimony differentiating the counts was elicited. The only amendment the State made to the *Page 7 
indictment was during trial to change the date of the offenses to August 28, 2003 through August 14, 2004.
 {¶ 11} The defense attempted to call Dr. Terence Campbell, a clinical psychologist, as an expert witness. The trial court conducted a voir dire examination of Dr. Campbell. During the voir dire, Dr. Campbell indicated that he would testify about the various problems that can occur when young children are inappropriately interviewed about alleged molestation. He further indicated that he would testify about the problems that can arise when the interviews are not audiotaped or videotaped. He stated that he would testify about the right way to interview a child, the wrong way to interview a child, and what problems would result if an interview was conducted incorrectly. He also stated that he would not opine on the truthfulness of the child's statements.
 {¶ 12} The trial court refused to allow Dr. Campbell to testify, on the bases that (1) he did not intend to give an opinion about whether the victim testified truthfully, (2) he was wrong about the dates of the offenses, (3) he showed a lack of knowledge as to the specific facts of the case, and (4) he was not prepared to give an opinion as to whether A.P. `s testimony was somehow improperly influenced by her mother or other people involved in the case.
 {¶ 13} For clarity, we discuss the assignments of error out of order where appropriate.
 ASSIGNMENT OF ERROR I *Page 8 {¶ 14} "The Trial Court Erred in Denying Defendant's Motion to Dismiss the Mistried Rape Count on Double Jeopardy Grounds When Defendant was Acquitted of Two Indistinguishable Counts of Rape by the Jury."
 {¶ 15} In this assignment of error, appellant contends that the trial court erred in denying his motion to dismiss count 17, the mistried rape count, because to subject him to a retrial on the count after an acquittal on two identical charges would violate his due process right against double jeopardy. We agree.
 {¶ 16} Double jeopardy is established by the Fifth Amendment to the Constitution of the United States, which states: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb * * *." The Fifth Amendment has been made applicable to the states through the Fourteenth Amendment. Benton v. Maryland (1969), 395 U.S. 784,89 S.Ct. 2056, 23 L.Ed.2d 707.
 {¶ 17} It is well established that the Double Jeopardy Clause protects against successive prosecutions for the same offense. United States v.Dixon (1993), 509 U.S. 688, 696, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556,567; Ashe v. Swenson (1970), 397 U.S. 436, 445-446, 90 S.Ct. 1189, 1195,25 L.Ed.2d 469, 476-477. As stated in Green v. United States (1957),355 U.S. 184, 187-188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204:
 {¶ 18} "The underlying idea [embodied in the Double Jeopardy Clause], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make *Page 9 
repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."
 {¶ 19} In addition to its primary function of safeguarding against governmental overreaching, the double jeopardy guarantee protects a defendant's "`valued right to have his trial completed by a particular tribunal.'" Crist v. Bretz (1978), 437 U.S. 28, 36, 98 S.Ct. 2156, 2161,57 L.Ed.2d 24, 31, quoting Wade v. Hunter (1949), 336 U.S. 684, 689,69 S.Ct. 834, 837, 93 L.Ed. 974, 978. Once a tribunal has decided an issue of ultimate fact in the defendant's favor, the double jeopardy doctrine also precludes a second jury from ever considering that same or identical issue in a later trial. Dowling v. United States (1990),493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed. 2d 708, 717.
 {¶ 20} In resolving this assignment of error, we must determine whether the indictment was sufficient. In Russell v. United States
(1962), 369 U.S. 749, 763-764, 82 S.Ct. 1038, 8 L.Ed. 2d 240, the United States Supreme Court outlined the criteria for determining the sufficiency of the indictment. These criteria are: (1) "whether the indictment contains the elements of the offense intended to be charged," (2) "and sufficiently apprises the defendant of what he must be prepared to meet," and, (3) "in case any other proceedings are taken against himfor a similar offense, whether the record shows with accuracy to whatextent he may plead a former acquittal or *Page 10 conviction." (Emphasis added.) (Citations omitted.) "The due process rights announced in Russell are required not only in federal indictments, but also in state criminal charges. De Vonish v. Keane
(C.A.2, 1994), 19 F.3d 107, 108; Fawcett v. Bablitch (C.A.7, 1992), 962 F.2d 617, 618; see, also, Isaac v. Grider (C.A.6, 2000), 211 F.3d 1269;Parks v. Hargett, 1999 U.S. App. LEXIS 5133, 1999 WL 157431, at 3 (10th Cir. 1999)." Valentine v. Konteh (2005), 395 F.3d 626, 631.
 {¶ 21} In United States v. Cruikshank (1875), 92 U.S. 542, 558,23 L.Ed. 588, the Supreme Court stated that "[t]he object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause, and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to bestated, not conclusions of law alone. A crime is made up of acts andintent; and these must be set forth in the indictment, with reasonableparticularity of time, place, and circumstances." (Emphasis added.)
 {¶ 22} The potential for double jeopardy occurring as a result of insufficient indictments and/or insufficient trial instructions to delineate differences in counts has been addressed head-on by the Sixth Circuit Court of Appeals in Valentine, supra. Valentine involved the granting of a writ of habeas corpus on behalf of a defendant whose conviction on multiple sexual charges had been upheld by this court upon *Page 11 
what the district court termed "carbon copy indictments." See State v.Valentine (July 17, 1997), Cuyahoga App. No. 71301; Valentine v.Huffman (N.D.Ohio 2003), 285 F.Supp.2d 1011. In pertinent part, the Sixth Circuit Court of Appeals stated that "the indictment charging Valentine with multiple, identical and undifferentiated counts violated the constitutional requirements imposed by due process. * * * When prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy. Even under the deferential standard of AEDPA,[2]
these convictions resting on such a clear violation of federal law cannot stand. * * * Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts." Valentine, 395 F.3d at 636.
 {¶ 23} In this case, the State indicted three carbon-copy rape counts. No part of the indictment, no amendment to the indictment, no bill of particulars, no jury instruction and no verdict forms exist to differentiate these counts one from the other such that a court in a second trial would be able to discern whether there had been a previous finding of not guilty as to the alleged act. It is, at this juncture of the proceedings, impossible to tell whether the rape counts that resulted in acquittal *Page 12 
referred to the allegation of digital penetration, or the allegation of oral copulation. Retrial upon the mistried rape count, therefore, would constitute double jeopardy.
 {¶ 24} Appellant's first assignment of error is sustained, and the court's ruling denying dismissal of the mistried rape charge is reversed.
 ASSIGNMENT OF ERROR V {¶ 25} "The Trial Court Committed Reversible Error by Excluding Defendant's Expert Witness From Testifying at Trial, in Violation of His Rights to Due Process and a Fair Trial."
 {¶ 26} In this assignment of error, appellant contends that the trial court erred by not allowing Dr. Campbell to testify. We agree.
 {¶ 27} The trial court has discretion in determining the admissibility of evidence. Evid. R. 104. The trial court's action in excluding evidence must be analyzed under an abuse of discretion standard of review. State v. Hymore (1967), 9 Ohio St. 2d 122, 128, 224 N.E.2d 126,130, cert. denied (1968), 390 U.S. 1024, 88 S. Ct. 1409.
 {¶ 28} During the voir dire of Dr. Campbell, he informed the trial court that he was prepared to testify about issues of children's suggestibility and memory, an interviewer's influence on children, the accuracy of an interviewer's recall, and the influence of therapists on children. Dr. Campbell explained that based on his review of the case, he was prepared to testify about specific instances in the case that he deemed problematic. For example, he was prepared to testify about the problems *Page 13 
that can arise when an anxious mother, who claimed to have been abused herself, questions her daughter as to allegations of abuse.
 {¶ 29} In questioning Dr. Campbell and in giving its reasons for not allowing him testify, the court focused in large part on whether Dr. Campbell was prepared to offer his opinion on whether A.P. testified truthfully or untruthfully. The court stated: "when I asked him the ultimate question as to whether or not he has an opinion to offer in this case as to whether the person making the allegations, the alleged victim, [A.P.] has testified untruthfully or inaccurately, he's unable to provide that opinion."
 {¶ 30} In State v. Boston (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court held that "an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Id. at the syllabus. The court reasoned that to allow an expert to so testify "infringes upon the role of the fact finder, who is charged with making determinations of veracity and credibility." Id. at 128-129.
 {¶ 31} Therefore, based on the authority of Boston, the trial court erred in excluding Dr. Campbell's testimony because he was not prepared to offer an opinion as to whether A.P.'s testimony was truthful. Further, although expert testimony on the veracity of a child declarant is improper, the Ohio Supreme Court has held that a defendant in a child sex abuse case may present testimony as to the proper protocol for interviewing child victims regarding their abuse. State v. Gersin,76 Ohio St.3d 491, 1996-Ohio-114, 668 N.E.2d 486. The Gersin court noted that its holding was *Page 14 
consistent with Boston because it did not allow for infringement upon the fact finder's role but, rather, would assist the trier of fact, in that most jurors would not be aware from their everyday experiences of how sexually abused children might respond to abuse. The Gersin court also noted that the prosecution relied upon the victim's interviews in their testimony and, therefore, the court held that "[h]ow that information was obtained and the accepted protocols on how to obtain such information certainly are relevant." Id. at 494.
 {¶ 32} Here, appellant's defense was based on the alleged suggestibility of A.P. and improper interview protocols. Dr. Campbell was prepared to testify to those issues. Moreover, the State's witnesses relied on those very interviews in their testimony.
 {¶ 33} We are not persuaded by the case of United States v.LeBlanc (C.A.6, 2002), 45 Fed. Appx. 393, on which the State relies. InLeBlanc, the Sixth Circuit Court of Appeals held that the trial court properly excluded the testimony of the expert who, coincidentally, was Dr. Campbell. In LeBlanc, however, Dr. Campbell's testimony was excluded primarily because there was no suggestion that the child victim had been improperly questioned, as the prosecution was based on the detailed admissions of the defendant himself.
 {¶ 34} Here, however, appellant's defense was based on the alleged suggestibility of A.P. and improper interview protocols. The social worker and therapist who testified for the State relied on the interviews of A.P. in their testimony. *Page 15 
Further, both agreed that when interviewing a child, leading questions can distort or plant something in a child's memory. They also both agreed that children are suggestible and easily led by their desire to please the questioner. Moreover, the court's finding that Dr. Campbell made a mistake about the date of the offenses would go to the weight, rather than the admissibility, of his testimony.
 {¶ 35} Accordingly, the trial court abused its discretion in not allowing Dr. Campbell to testify. Insofar as Dr. Campbell's testimony went to the heart of the allegations contained in the indictment, and since the social worker and therapist who testified for the State relied on the interviews in drawing their conclusions, there was surely prejudice. The fifth assignment of error is therefore sustained.
 ASSIGNMENT OF ERROR III {¶ 36} "Because the Defendant was Indicted with Numerous Indistinguishable `Carbon Copy' Counts of Gross Sexual Imposition and Kidnapping and Received Acquittals on Some Counts of Each Type of Offense, His Due Process Rights Require the Vacation of His Convictions."
 ASSIGNMENT OF ERROR IV {¶ 37} "Appellant's Indictment and Conviction of Repetitive and Unspecific Offenses Violated His Due Process Rights to Notice of the Crime Charged and Protection From Double Jeopardy and Requires the Dismissal of the Duplicative Gross Sexual Imposition Count." *Page 16 
 {¶ 38} In light of our finding above that failure to permit Dr. Campbell to testify was an abuse of discretion and reversible error, we proceed to the third and fourth assignments of error in order to determine whether there are any counts remaining for retrial in this matter.
 {¶ 39} The third and fourth assignments of error essentially raise the same issue as the first assignment of error: since there have been acquittals on counts that are worded identically as counts upon which there were convictions, if this matter is reversed, there is no way to tell upon which counts the jury convicted, and upon which they acquitted. In short, retrial on the two gross sexual imposition charges and the kidnapping charge would be barred by double jeopardy. Appellant's position in this matter is more or less identical to his position as to the retrial of the mistried rape count.
 {¶ 40} Appellant relies on the Sixth Circuit's opinion in Isaac v.Grider, supra. In Isaac, the defendant was indicted with five identical counts of second degree sodomy and five identical counts of second degree sexual abuse, relating to four victims, one of whom was J.J. The trial court directed verdicts for two of the sodomy counts and two of the sexual abuse counts, all relative to J.J. The jury convicted Isaac of the remaining counts.
 {¶ 41} In finding that double jeopardy may have resulted in the case, the Sixth Circuit noted that the jury instructions did not advise the jury as to the court's directed verdicts, and the instructions did not limit the jury's consideration of the evidence *Page 17 
relating to J.J. The court's review of the record showed that there was at least some evidence of eight to nine incidents of sodomy and five incidents of sexual abuse relating to J.J. The court found that that evidence could not be reconciled with the court's instructions on three counts of sodomy and three counts of sexual abuse. The court held that "[c]onsequently, it is possible that the jury convicted the petitioner of conduct for which the trial court directed an acquittal." Id.
 {¶ 42} In this case, while none of the counts were directed by the court, we have before us the same resulting split verdict (i.e., some of the identical counts guilty, some not guilty) that likewise implicates Fifth Amendment issues. In short, if these three counts are retried, it is possible that the jury could convict appellant of conduct for which he has previously been acquitted.
 {¶ 43} Initially we note that appellant failed to object to the form of the indictment before trial as required by Crim.R. 12(C). See, also,State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321. He has therefore waived any objection and must show plain error to overcome the waiver. Id.; State v. Sapp, 105 Ohio St.3d 104, 2004-Ohio-7008,822 N.E.2d 1239. An alleged error is plain error only if the error is "obvious." Yaacov, supra; State v. Barnes, 94 Ohio St.3d 21,2002-Ohio-68, 759 N.E.2d 1240, and "but for the error, the outcome of the trial clearly would have been otherwise." Yaacov, supra; State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. We find proceeding upon the copycat indictment to be plain error. *Page 18 
 {¶ 44} In Valentine, supra, there were no factual bases for 40 separate incidents contained in the indictment, bill of particulars, or testimony at trial. At trial, the victim described "typical" abuse by Valentine that occurred 15 or 20 times. Similarly, in this case, the victim described "typical" abuse that occurred when she would spend the night at her grandparents' house and she and appellant would be in the basement watching television.
 {¶ 45} Based on this record, and for the same reason we are barring retrial on count 17, we conclude that A.P.'s testimony did not provide discernible facts to differentiate the gross sexual imposition and kidnapping charges, nor did the indictment, bill of particulars, jury instructions or verdict forms. Therefore, we must prohibit retrial on the remaining two counts of gross sexual imposition and kidnapping. Appellant's third and fourth assignments of error are sustained.
 {¶ 46} The remaining assignments of error are moot in light of the above rulings and we decline to address them. See App.R. 12(A)(1)(c).
 {¶ 47} The convictions for gross sexual imposition and kidnapping are vacated, and the court's ruling on appellant's motion to dismiss count 17 (the mistried rape count) is reversed.
It is ordered that there were reasonable grounds for this appeal and that appellee bear the costs herein taxed. *Page 19 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., CONCURS
ANN DYKE, J., CONCURS IN JUDGMENT ONLY
[1] The new allegations resulted in the second indictment.
[2] Valentine's petition was made pursuant to 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Page 1