[Cite as *State v. Jackson*, 2011-Ohio-5920.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95920**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# WAYNE JACKSON JR.

DEFENDANT-APPELLANT

# JUDGMENT:
# AFFIRMED IN PART;
# VACATED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-534300

**BEFORE:** Keough, J., Kilbane, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** November 17, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 400
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Denise J. Salerno
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Wayne Jackson Jr., appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of child endangering, domestic violence, and drug possession. For the reasons that follow, we affirm Jackson's conviction for drug possession, which he does not challenge on appeal, but vacate his convictions for domestic violence and child endangering.

I.

{¶ 2} In February 2010, Jackson was indicted in a multi-count indictment on one count of felonious assault in violation of R.C. 2903.11(A)(1) (knowingly cause serious physical harm); one count of domestic violence in violation of R.C. 2919.25(A) (knowingly cause or attempt to cause physical harm to a family or household member); one count of child endangering in violation of R.C. 2919.22(B)(2) (recklessly torture or cruelly abuse a minor) with a furthermore specification that the violation resulted in serious physical harm to the victim; one count of child endangering in violation of R.C. 2919.22(B)(3) (recklessly administer excessive corporal punishment to a minor), with a furthermore specification that the violation resulted in serious physical harm to the victim; one count of drug possession in violation of R.C. 2925.11(A); and one count of possessing criminal tools in violation of R.C. 2923.24(A).

{¶ 3} The indictment tracked the language of the various statutes and did not set forth any factual bases for the charges other than that each offense occurred on February 14, 2010. The State's bill of particulars, filed upon Jackson's motion, merely restated the indictment, with the added language that each offense was "contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio."

{¶ 4} Jackson pled not guilty and the case proceeded to a jury trial.

{¶ 5} The evidence at trial established that Jackson had two children — R.J., the 10-year-old victim, and Wayne III, who was 18 years old at the time of the incident — with his ex-wife, Shawna Jackson. R.J. and Wayne lived with Shawna; Jackson lived

with his girlfriend, Jackie Wright, and Jackie's daughter, Anita. R.J. would sometimes spend weekends at Jackson's house.

{¶ 6} On Friday, February 12, 2010, Jackson picked up R.J., who was going to spend the weekend at his house. Jackson's girlfriend, Jackie, was "dumbfounded" when she learned on Friday that R.J. would be spending the weekend with them because she and Jackson had planned to celebrate her birthday that weekend.

{¶ 7} On Sunday morning, February 14, 2010, Jackie accused R.J. of stealing her daughter's camera. R.J. denied that he had stolen anything, and ran upstairs to the bathroom. R.J. testified that as he was sitting on the toilet, Jackson came into the bathroom and punched him three or four times in the stomach with his fist. According to R.J., Jackson hit him two more times and then left the room.

{¶ 8} That evening, after R.J. and Jackson returned home from an outing, Jackie accused R.J. of stealing her ring, which she had allegedly found in the pocket of a pair of R.J.'s pants that were packed inside his book bag. R.J. testified that Jackson then whipped him on his buttocks with a leather belt; R.J. said that the belt also hit his neck as Jackson was whipping him.

{¶ 9} R.J. testified that Jackson then went into the kitchen, got a fork from the dish rack, and heated it over the gas stove flame. After telling R.J. to lift up his sleeve, Jackson grabbed R.J.'s wrist, and then burned his forearm two times with the fork.

{¶ 10} R.J. testified that Jackson then called Shawna and "cussed her out." Jackson and Jackie then took R.J. home. R.J. testified that as he was getting out of the

car at his house, Jackson pushed him out of the car and he landed in a puddle in the street.

{¶ 11} R.J.'s brother Wayne was waiting outside when Jackson dropped R.J. off at approximately 10:30 p.m. Wayne testified that he saw Jackson's car drive up and then slow down a little, and then he saw R.J. "fall out of the car." After R.J. showed Wayne his injuries and told him what happened, Wayne called the police.

{¶ 12} Cleveland police officer David Price responded to R.J.'s home just before 11 p.m. Price testified that R.J. was upset, and his shirt and pants were wet. R.J. told Price that his father had burned him and Price observed burns on R.J.'s forearm that "looked like somebody took a fork, heated it up and branded him on his arm with it." Price called EMS, who transported R.J. to the hospital.

{¶ 13} Dr. Lynn Dezelon treated R.J. in the emergency room. She testified that R.J. had a second degree burn on his right forearm that was "consistent with that of a fork," and was less than 24 hours old. She testified further that R.J. had a small abrasion on his neck that was "consistent with trauma or some sort of a pressure or strike" and "could be consistent with being hit with a belt." Dr. Dezelon also noted a "hyperpigmented area" where R.J. said Jackson had punched him.

{¶ 14} The following day, R.J. received follow-up treatment for his burn. Nurse Tammy Coffee testified that the burns on R.J.'s right forearm resulted from contact with a "hot solid object" and opined that the burns were not accidental.

{¶ 15} The police arrested Jackson at his home at midnight on February 14, 2010. While patting Jackson down, they found powder cocaine and marijuana, which Jackson

admitted was his, in Jackson's pocket.  A few days later, the  police executed a search warrant at Jackson's home.   Detective Alan Strickler testified that he found a leather belt on the dining room table, which Jackson's girlfriend told him was the belt that Jackson had used to whip R.J.    Detective Strickler testified that because heated metal may discolor, he searched the house for a discolored fork, but did not find one.

{¶ 16} Jackson and Wright testified in Jackson's defense.   Jackson admitted hitting R.J. when he was in the bathroom, and admitted hitting him with a belt as punishment for stealing, but insisted that the abrasion on R.J.'s neck did not come from the belt.   He also denied that he had burned R.J.   Wright   likewise admitted that Jackson had whipped R.J. with a belt, but denied that he burned him.   Wright also denied that Jackson pushed R.J. out of the car.

{¶ 17} The trial court subsequently granted Jackson's Crim.R. 29 motion in part and dismissed the possession of criminal tools charge.   The jury found Jackson guilty of both counts of child endangering, but not guilty of the attendant serious physical harm specifications.   The jury also found Jackson guilty of domestic violence and drug possession.   The jury found Jackson not guilty of felonious assault.

{¶ 18} The trial court sentenced him to an aggregate four years incarceration.   The court subsequently granted Jackson's motion for judicial release and imposed community control sanctions that included drug testing, anger management counseling, and no contact with the victim or his family.

II.

{¶ 19} In his first assignment of error, Jackson contends that his due process rights were violated because the indictment failed to specify which of the four instances of Jackson's alleged abuse of R.J. (punching him, beating him with a belt, burning him with a fork, and pushing him out of the car) constituted the bases for the felonious assault, domestic violence, and endangering children charges. He contends that the State's failure to specify which incident of abuse correlated with each count resulted in a duplicitous indictment that deprived him of his rights to adequate notice to prepare a defense, a unanimous jury verdict, and protection against double jeopardy.

{¶ 20} Jackson did not object to the form of the indictment before trial as required by Crim.R. 12(C). He therefore waived all but plain error. *State v. Hlavsa*, Cuyahoga App. No. 93810, 2011-Ohio-3379, ¶4. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B). Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 21} "Pursuant to Crim.R. 8(A), each offense must be separately delineated in the indictment. An indictment is duplicitous when two or more separate offenses are joined in one count. 'The prohibition against duplicity is geared to protect the accused's Sixth Amendment right to notice of the nature of the charge against him and prevent confusion as to the basis of the verdict.' A criminal defendant is entitled to a unanimous jury verdict. Crim.R. 31(A). If two distinct offenses are presented in a single charge, however, unanimity may be compromised. That is, if two offenses are joined in a single

count, while the jury may agree that the defendant is guilty of that count, they may have not unanimously decided which set of facts resulted in the offense." (Internal citations omitted.) *State v. Ward*, Lorain App. No. 90CA009720, 2011-Ohio-518, ¶5. See, also, *United States v. Kakos* (C.A. 6, 2007), 483 F.3d 441, 443 ("While a duplicative indictment can prejudice a defendant in a variety of ways, the primary concern is that a defendant may be deprived of his right to a unanimous jury verdict.").

{¶ 22} The Ohio Supreme Court addressed the issue of juror unanimity in *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, instructing as follows:

{¶ 23} "In determining whether the state has impermissibly interfered with a defendant's Crim.R. 31(A) right to juror unanimity and the due process right to require that the state prove each element of the offense beyond a reasonable doubt, the critical inquiry is whether the case involves 'alternative means' or 'multiple acts.'

{¶ 24} "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.

{¶ 25} "In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the state elect the particular criminal act upon

which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." Id. at ¶ 48-50. See, also, *State v. Ficklin*, Cuyahoga App. No. 92228, 2009-Ohio-6103, ¶3 (duplicity in an indictment not fatal if the State chooses either the count or charge within the count upon which it will rely); *Hlavsa*, supra at ¶8 (due process problems in the indictment may be cured if the prosecution delineates the factual bases for the counts during trial).

{¶ 26} At trial, the State presented evidence of multiple, distinct acts of abuse, any of which could constitute the offenses charged. During closing, the prosecutor elected the acts it was relying upon for each count. The prosecutor first told the jury that none of the charges were based upon Jackson pushing R.J. out of the car and that event was irrelevant to the jury's deliberations. (Tr. 872.) The prosecutor then told the jury "it's time to start thinking about how to apply the facts to all the indicted counts." (Tr. 879.) The prosecutor told the jury that Jackson's burning of R.J.'s forearm with the heated fork applied to the felonious assault charge and met the "knowingly cause serious physical harm element" of the charge. With respect to the domestic violence charge, the prosecutor told the jury that "it's any physical harm. And remember, an attempt would count also. So using the belt. Anything. The attempt to cause serious physical harm fits domestic violence."

{¶ 27} The prosecutor then addressed the child endangering counts. With respect to child endangerment in violation of R.C. 2919.22(B)(2) (recklessly torture or cruelly abuse a minor resulting in serious physical harm), the prosecutor told the jury that putting

a heated fork on a child's forearm was cruel abuse and torture that had caused serious physical harm. (Tr. 882.) Likewise, with respect to child endangering in violation of R.C. 2919.22(B)(3) (recklessly administer excessive corporal punishment to a minor resulting in serious physical harm), the prosecutor told the jury that punishing R.J. for stealing by heating a fork and causing second degree burns on his arm was excessive punishment that caused serious physical harm. (Tr. 883.) The prosecutor made no mention in closing of Jackson's alleged punching R.J. in the stomach.

{¶ 28} The trial court then instructed the jury regarding each count. The instructions tracked the language of the indictment and did not associate the charges to the different incidents of physical abuse.

{¶ 29} The jury was apparently confused. After the jury began deliberating, it submitted the following questions to the court:

{¶ 30} "Please explain Counts 3 and 4 — and their differences (child endangering).

{¶ 31} "Is corporal punishment the belt or burn or both?

{¶ 32} "Is each count for a specific incident?

{¶ 33} "Which count includes the burning charge? Which count applies to the whipping?

{¶ 34} "Is physical discipline domestic violence?"

{¶ 35} The trial court did not address the jury questions on the record, but responded in writing as follows:

{¶ 36} "The two child endangering [sic] are separate charges that contain different elements. Please reread separate charges instruction regarding separate charges and reread specific instruction carefully as to each count."

{¶ 37} The jury subsequently found Jackson guilty of both counts of child endangering, but not guilty of the attendant serious physical harm specifications, and not guilty of felonious assault. The jury also found Jackson guilty of domestic violence and drug possession.

{¶ 38} On appeal, Jackson argues that the indictment was duplicitous because the child endangering and domestic violence charges could have been based on any of the four incidents of alleged abuse. Further, Jackson contends that the State's failure to correlate a particular charge with a particular event meant that the jury was left to decide for itself which incident applied to which count and render its verdict based on its own speculation, with the result that he was deprived of his right to a unanimous jury verdict.

{¶ 39} The State responds that the verdict itself is evidence that the counts were adequately delineated for the jury. The State contends that only the harm caused by the burning and belt whipping could be considered serious physical harm,[1] and therefore, because the jury acquitted Jackson of felonious assault and the furthermore specifications of the child endangering counts, all of which required proof of serious physical harm, the

---

[1]"Serious physical harm" includes "any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement" and "any physical harm that involves actue pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).

jury found Jackson not guilty of burning and whipping R.J., and the convictions for child endangering and domestic violence were necessarily based on Jackson's punching R.J. in the stomach.

{¶ 40} But despite the State's assertion to this court that the jury found Jackson guilty of child endangering and domestic violence based on Jackson punching R.J., at no time in closing — when the prosecutor delineated the factual bases for the separate counts — did the prosecutor tell the jury that Jackson's punches to R.J.'s stomach were the basis for the child endangering charges. Rather, the prosecutor told the jury that Jackson's alleged *burning* of R.J.'s forearm gave rise to the child endangering offenses. The prosecutor also told the jury in closing that the domestic violence charge was based on Jackson whipping R.J. with the belt; there was no mention of punches to the stomach associated with this count.

{¶ 41} The trial court apparently believed the verdict meant the jury had found that Jackson burned R.J. At sentencing, Jackson's lawyer argued that the jury must have determined that Jackson did not burn R.J. because it acquitted him of causing serious physical harm. But the judge told Jackson that he did not interpret the facts that way:

{¶ 42} "Now, your attorney, who is advocating on your behalf in doing his job, has chosen to interpret the jury's finding in this case that they must not have believed [R.J.] and believed your version of it. I don't necessarily believe that's the only thing that can be gleaned from the jury's verdict in this particular case. That's looking at the facts in your light most favorably.

**{¶ 43}** "I think you could equally glean from the verdict that the jury found that you * * * did not intentionally set out on that day as would be required under the felonious assault, and that you may have recklessly caused this event to happen, and * * * that for some reason they didn't find that amounted to serious physical harm, the child was never in danger of death.

**{¶ 44}** "* * * The jury might actually have felt that you caused the burning just as equally as they may have chosen to look at the facts the way your counsel has argued as well."

**{¶ 45}** So did the jury convict Jackson of child endangering for punching R.J. in the stomach, as the State contends?   Or did the jury convict him of child endangering but acquit him of the furthermore specifications, as the trial judge suggested, because he recklessly burned R.J. but did not cause serious physical harm?   Or did some jurors convict Jackson of child endangering because of the punches and others because of the burning?   On this record, it is impossible to know.   Despite the jury's ability to agree that Jackson was guilty of domestic violence and child endangering, each member of the panel may not have based his or her decision on the same facts, thereby denying Jackson his right to a unanimous verdict.

**{¶ 46}** Likewise, the indictment does not protect Jackson against double jeopardy. To be sufficient, an indictment must (1) contain the elements of the charged offense, (2) give the defendant adequate notice of the charges, and (3) protect the defendant against

double jeopardy. *State v. Ogle*, Cuyahoga App. No. 87695, 2007-Ohio-5066, ¶20, citing *State v. Russell* (1961), 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240.[2]

**{¶ 47}** Here, the indictment did not apprise Jackson of what occurrences formed the basis of the charges he faced and, as discussed above, the jury had no idea which charge referred to which act. Further, as evidenced by the State's varying assertions to the jury and this court, the State itself is not sure which act was associated with which charge. Was Jackson acquitted of burning R.J.? Was he convicted of hitting him with a belt? Was he convicted of punching him in the stomach? It is impossible to tell. Consequently, the record does not "show with accuracy to what extent [Jackson could] plead a former acquittal or conviction" in a second trial. *Russell*, supra at 764.

**{¶ 48}** Accordingly, we hold that Jackson's due process rights were violated where neither the indictment, bill of particulars, nor the jury instructions apprised him of what occurrences formed the bases of the charges he faced, leading to the possibility of lack of unanimity in the jury, and failing to protect him from double jeopardy. Further, we find that the State's attempt to cure the due process violations by delineating in closing argument what acts were associated with each count was unsuccessful. Therefore, Jackson's first assignment of error is sustained.

---

[2]It is well established that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects against successive prosecutions for the same offense. *Ogle*, supra at ¶17, citing *United States v. Dixon* (1993), 509 U.S. 688, 696, 113 S.Ct.2849, 125 L.Ed.2d 556.

**{¶ 49}** In light of our resolution of the first assignment of error, his other assignments of error are rendered moot and we need not consider them. See App.R. 12(A)(1)(c).

**{¶ 50}** We vacate Jackson's convictions for domestic violence and child endangering and remand with instructions to the trial court to enter an order vacating the convictions.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS;
LARRY A. JONES, J., DISSENTS WITH SEPARATE OPINION

LARRY A. JONES, J., DISSENTING:

**{¶ 51}** Respectfully, I dissent, and would overrule the first assignment of error.

**{¶ 52}** The majority concludes that Jackson's convictions for child endangering and domestic violence should be vacated because he was not properly apprised of which acts against the victim formed the bases of the charges he faced. Since Jackson did

not object to the indictment prior to trial as required by Crim.R. 12(C), he has waived all but plain error.

**{¶ 53}** Jackson also did not object to, nor propose alternate or additional, jury instructions. Crim.R. 30(A) provides, " * * * a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Absent such objection, we must engage in a plain error analysis. See *Kakos*, supra at 445.

**{¶ 54}** Ohio courts have long recognized that "[p]lain error is not present unless but for the error complained of, the outcome of the trial would have been different." *Gardner*, supra at 437, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. "Such a conclusion should be exercised with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus. I would find plain error does not exist in this case.

**{¶ 55}** In multiple-acts cases, such as the case at bar, "due process requires that the jurors must be instructed as to the specific criminal act(s) that the defendant intended to commit * * *." *Gardner* at 436. This can be accomplished either by the state electing which crime underlies a charged offense or by the trial court giving the jury an augmented or specific unanimity instruction.

**{¶ 56}** Although the trial court only gave the jury a general unanimity instruction, I would find that the state properly elected which criminal act accompanied each charge.

During closing arguments, the prosecutor told the jury that Jackson burning his son with a fork was the underlying incident for the crimes of child endangering and felonious assault. The prosecutor further told the jury that the belt incident was the underlying incident for the domestic violence charge.

{¶ 57} The majority relies on the state's argument on appeal that the jury convicted Jackson of child endangering for punching his son in the stomach. Although the state makes that argument on appeal, its contention is not supported by the record. The state did *not* make that argument during closing arguments. But even though the state never elected to align the stomach punch incident to a certain charge, e.g., one of the child endangering counts, that failure does not negate those crimes that the prosecutor did elect. If anything, the state's failure to align the stomach punch incident to a particular charge leaves the burning incident as the basis for both child endangering charges, which means that those convictions, one could argue, would merge as allied offenses. It does not lead to the conclusion that the state's election during closing arguments was completely unsuccessful and, therefore, Jackson's convictions should be vacated.

{¶ 58} Finally, although the jury submitted a series of questions during deliberations evidencing what the majority refers to as the jury's apparent confusion, there is nothing in the record to indicate that the jury was not able to follow the trial court's written response instructing the jury to reread the jury instructions or that the jury was unable, once it did so, to come to an unanimous verdict. Thus, in my opinion, the jury's questions do not support the conclusion that the jury rendered a "patchwork," or

less than unanimous verdict.  Likewise, I would not find that the indictment failed to protect Jackson against double jeopardy.[3]

{¶ 59} Accordingly, I would overrule Jackson's first assignment of error and proceed to consider his additional assigned errors.

---

[3] Perhaps a more prudent course, that could alleviate confusion surrounding a prosecutor's election of offenses, would be for prosecutors to routinely ask for and trial courts to give juries a specific or augmented unanimity instruction in a multiple acts case stating that the jurors must all agree that the same underlying criminal act for each charge must be proved beyond a reasonable doubt.  I do note, however, that there is currently no sample specific or augmented unanimity instruction in the Ohio Jury Instructions to serve as a guide on this matter.